Juan E. Monteverde (admitted *pro hac vice*, NY Reg. No. 4467882)
**MONTEVERDE & ASSOCIATES PC**
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, New York 10118
Tel: (212) 971-1341
jmonteverde@monteverdelaw.com

David E. Bower (SBN 119546)
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
dbower@monteverdelaw.com

*Counsel for Lead Plaintiff and*
*Lead Counsel for the Putative Class*

[additional counsel on signature page]

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| SAISRAVAN BHARADWAJ KARRI, Individually and on Behalf of All Others Similarly Situated,<br><br>             Plaintiff,<br><br>   v.<br><br>OCLARO, INC., MARISSA PETERSON, EDWARD COLLINS, GREG DOUGHERTY, KENDALL COWAN, DENISE HAYLOR, IAN SMALL, BILL SMITH, and JOEL A. SMITH III,<br><br>             Defendants. | Case No. 3:18-cv-03435-JD<br><br>**LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: April 20, 2023<br>Time: 10:00 a.m.<br>Courtroom: 11 – 19th Floor<br>Judge: Hon. James Donato |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………..……...iii

NOTICE OF MOTION.......................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ................................................................. 2

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 2

I.      PRELIMINARY STATEMENT ............................................................................. 2

II.     HISTORY OF THE LITIGATION ....................................................................... 3

     A.      Commencement of the Action ................................................................. 3

     B.      Discovery Undertaken by Lead Plaintiff .............................................. 4

     C.      Settlement Negotiations and Mediation................................................ 5

III.    TERMS OF THE PROPOSED SETTLEMENT ................................................ 5

IV.     ARGUMENT ............................................................................................................ 5

     A.      The Proposed Settlement Should Be Preliminarily Approved ......... 5

          1.      The Settlement Class Has Been Vigorously Represented ……………… 6

          2.      The Settlement is the Result of Good Faith, Arm's-Length Negotiations……………………………………………………8

          3.      The Settlement Has No Obvious Deficiencies and Does Not Improperly Grant Preferential Treatment to Lead Plaintiff or Segments of the Class………………………………………………………………...9

          4.      The Settlement Provides Meaningful Relief…………………………… 11

     B.      Provisional Certification of the Proposed Settlement Class is Appropriate ........ 13

          1.      The Settlement Class Satisfies the Requirements of Rule 23(a)…………14

          2.      The Settlement Class Meets the Requirements of Rule 23(b)(3)……….. 16

               a.      Common Legal and Factual Questions Predominate……………16

               b.      A Class Action is Superior to Other Methods of Adjudication….17

C.    The Notice Program Satisfies Due Process Requirements, this Court's Procedural Guidance for Class Action Settlements, and is Sufficient Under Rule 23 and the PSLRA ......... 18

D.    Anticipated Legal Fees and Expenses................................................................... 20

E.    Proposed Schedule of Events ................................................................................ 23

V.    CONCLUSION.................................................................................................................. 23

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 3:18-cv-03435-JD

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>CASES</u>                                                                                      <u>PAGE(S)</u>

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) .................................................................................... *passim*

*Bellinghausen v. Tractor Supply Co.*,
    306 F.R.D. 245 (N.D. Cal. 2015) ....................................................................... 10

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................................... 8

*In re Capacitors Antitrust Litig.*,
    No. 3:14-cv-03264-JD, 2018 U.S. Dist. LEXIS 169764 (N.D. Cal. Sept. 21, 2018) ............ 20

*In re Celera Corp. Secs. Litig.*,
    No. 5:10-CV-02604-EJD, 2015 U.S. Dist. LEXIS 42228 (N.D. Cal. Mar. 31, 2015) .......... 20

*Churchill Village L.L.C. v. General Electric Co.*,
    361 F.3d 566 (9th Cir. 2004) ............................................................................. 11

*In re Cooper Cos. Sec. Litig.*,
    254 F.R.D. 628 (C.D. Cal. 2009) ....................................................................... 14

*In re DaimlerChrysler AG Sec. Litig.*,
    216 F.R.D. 291 (D. Del. 2003) ......................................................................... 16

*Davis v. Yelp, Inc.*,
    No. 3:18-cv-00400-EMC, 2023 U.S. Dist. LEXIS 40323 (N.D. Cal. Jan. 27, 2023) ........... 22

*De Leon v. Ricoh USA, Inc.*,
    No. 3:18-cv-03725-JSC, 2019 U.S. Dist. LEXIS 204442 (N.D. Cal. Nov. 25, 2019) ............ 9

*Denton v. Pennymac Loan Servs., L.L.C.*,
    252 F. Supp. 3d 504 (E.D. Va. 2017) ................................................................. 21

*Desai v. Deutsche Bank Sec. Ltd.*,
    573 F.3d 931 (9th Cir. 2009) ............................................................................. 17

*Emulex Corp. v. Varjabedian*,
    139 S. Ct. 1407 (2019) ...................................................................................... 7

*In re Extreme Networks, Inc. Sec. Litig.*,
    No. 3:15-cv-04883-BLF, 2019 U.S. Dist. LEXIS 121886 (N.D. Cal. July 22, 2019) ..... 10, 13

*In re Facebook Biometric Info. Priv. Litig.*,
    522 F. Supp. 3d 617 (N.D. Cal. 2021) ............................................................ 21, 22

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- iii -

*In re Facebook Biometric Info. Priv. Litig.*,
No. 3:15-cv-03747-JD, 2020 U.S. Dist. LEXIS 151269 (N.D. Cal. Aug. 19, 2020) ........... 6, 8

*Fraley v. Facebook, Inc.*,
966 F. Supp. 2d 939 (N.D. Cal. 2013) .............................................................. 10, 11

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ....................................................................... 14, 15

*In re Hot Topic, Inc. Sec. Litig.*,
No. 2:13-cv-02939-SJO (JCx),
2014 U.S. Dist. LEXIS 155544 (C.D. Cal. Nov. 3, 2014) ............................... 15, 16

*Mazza v. Am. Honda Motor Co.*,
66 F.3d 581 (9th Cir. 2012) .................................................................................15

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ............................................................................. 21

*Moore v. Verizon Commc'ns, Inc.*,
No: C 09-cv-1823-SBA, 2013 U.S. Dist. LEXIS 122901 (N.D. Cal. Aug. 28, 2013) ............. 8

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F. 4th 651 (9th Cir. 2022) .............................................................................15

*In re Omnivision Techs.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................................... 7

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ............................................................................... 21

*Relente v. Viator, Inc.*,
No. 12-cv-05868-JD, 2014 U.S. Dist. LEXIS 160350 (N.D. Cal. Nov. 14, 2014) ................. 6

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ......................................................................... 8, 10

*Romero v. Producers Dairy Foods, Inc.*,
No. 1:05cv0484 DLB, 2007 U.S. Dist. LEXIS 86270 (E.D. Cal. Nov. 13, 2007) ................ 21

*In re Seagate Tech. II Sec. Litig.*,
843 F. Supp. 1341 (N.D. Cal. 1994) .................................................................. 17

*Stanger v. China Elec. Motor, Inc.*,
812 F.3d 734 (9th Cir. 2016) ............................................................................ 21

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................... 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. MDL 3:07-md-1827 SI, 2011 U.S. Dist. LEXIS 154287 (N.D. Cal. Dec. 27, 2011) ..... 21

*Todd v. STAAR Surgical Co.*,
    No. 14-cv-5263-MWF (GJSx), 2017 U.S. Dist. LEXIS 176183 (C.D. Cal. Oct. 24, 2017) .. 10

*Varjabedian v. Emulex Corp.*,
    888 F.3d 399 (9th Cir. 2018) ................................................................ 7

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .............................................................. 22

*In re Wells Fargo & Co. S'holder Derivative Litig.* ,
    445 F. Supp. 3d 508 (N.D. Cal. 2020) .................................................. 6

*Wong v. Arlo Techs.*,
    No. 5:19-cv-00372-BLF, 2021 U.S. Dist. LEXIS 58514 (N.D. Cal. Mar. 25, 2021) ............. 8

## STATUTES

15 U.S.C. § 78n(a) ...............................................................................3

15 U.S.C. § 78t(a) ...............................................................................3

15 U.S.C. § 78u-4(a)(4) .......................................................................9

15 U.S.C. § 78u-4(a)(7) ......................................................................18

## RULES & REGULATIONS

Fed. R. Civ. P. 12(c) ..........................................................................4

Fed. R. Civ. P. 23 ...................................................................... *passim*

17 C.F.R. § 240.14a-9 .........................................................................3

## OTHER AUTHORITIES

Cornerstone Research, *Shareholder Litigation Involving Acquisition of Public Companies, Review of 2015 and 1H 2016 M&A Litigation* (2016) ................................................2

Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, NERA Economic Consulting (Jan. 23, 2023) .......................3

## NOTICE OF MOTION

**TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that on April 20, 2023 at 10:00 a.m., or as soon thereafter as counsel may be heard before the Honorable James Donato, United States District Judge, at the United States Courthouse, United States District Court, Northern District of California, 450 Golden Gate Ave., San Francisco, California, Lead Plaintiff Saisravan Bharadwaj Karri ("Lead Plaintiff"), on behalf of himself and all Settlement Class Members,[1] will and hereby does move for entry of the Proposed Order Preliminarily Approving Settlement and Providing for Notice (Stipulation, Ex. A), which will: (1) preliminarily approve the terms of the proposed Settlement as set forth in the Stipulation; (2) conditionally certify the Settlement Class for purposes of implementing the proposed Settlement; (3) approve the form and method for providing notice of the proposed Settlement and Final Approval Hearing to the Settlement Class; and (4) schedule the Final Approval Hearing.

The grounds for this motion are that the proposed Settlement is within the range of what could be found to be fair, reasonable, and adequate, such that notice of its terms may be disseminated to members of the proposed Settlement Class and a hearing for final approval of the proposed Settlement scheduled.

This motion is supported by the following memorandum of points and authorities, the accompanying Declaration of Juan E. Monteverde and the exhibits thereto, including the Stipulation and its exhibits, the previous filings and orders in this case, and such other and further representations as may be made by counsel at any hearing on this matter.

---

[1] All capitalized terms not defined herein have the same meanings set forth in the Stipulation of Settlement dated March 16, 2023 ("Stipulation") and filed contemporaneously herewith as Exhibit 1 to the Declaration of Juan E. Monteverde in Support of Lead Plaintiff's Motion for Preliminary Approval of Settlement ("Monteverde Decl.").

**STATEMENT OF ISSUES TO BE DECIDED**

1.     Whether the proposed $15,250,000 Settlement is within the range of fairness, reasonableness, and adequacy to warrant the Court's preliminary approval and the dissemination of notice of its terms to members of the proposed Settlement Class.

2.     Whether the Settlement Class should be preliminarily certified pursuant to Federal Rule of Civil Procedure 23(b)(3) for purposes of settlement.

3.     Whether the proposed form of settlement notice and proof of claim and release form and the manner for dissemination to the Settlement Class Members should be approved.

4.     Whether the Court should set a date for a hearing for final approval of the proposed Settlement and the application of Lead Counsel for an award of attorneys' fees and reimbursement of costs and expenses.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     PRELIMINARY STATEMENT**

Lead Plaintiff secured a $15,250,000 common fund settlement, a meaningful recovery for the Settlement Class in light of the significant risks associated with continuing to litigate this Section 14(a) case arising from a merger. Such merger-related actions face a difficult and unique hurdle in proving economic loss, namely that shareholders received a premium over the stock's trading price, which was agreed to after a sales process during which the corporation's value was vetted by third parties. This is one of the main reasons why monetary recoveries in post-merger litigation are "relatively rare."[2] Indeed, even if Plaintiff prevailed in proving liability (which presented its own challenges), the Settlement Class would not have received a dollar if the Court or a jury agreed with Defendants and their experts regarding loss causation/damages.[3]

---

[2]   Cornerstone Research, *Shareholder Litigation Involving Acquisition of Public Companies, Review of 2015 and 1H 2016 M&A Litigation*, at p. 5 (2016), *available at* https://securities.stanford.edu/research-reports/1996-2016/Shareholder-Litigation-Involving-Acquisitions-of-Public-CompaniesReview-of-2015-and-1H-2016-MA-Litigation.pdf.

[3]   *See* ECF No. 177-8 (Expert Declaration of Steven Davidoff Solomon), at 11-12; ECF No. 178 (Expert Declaration of Andrea L. Eisfeldt, Ph.D.). Professor Solomon and Dr. Eisfeldt further

Lead Plaintiff and Lead Counsel were well aware of the strengths and weaknesses of this case when they agreed to settle, as the proposed Settlement was achieved after the completion of fact and expert discovery, consultation with damages and corporate governance experts, and two mediation sessions in a hard-fought mediation process overseen by an experienced mediator for almost two years. As a result of Lead Plaintiff's and Lead Counsel's efforts over the past four years, the Settlement Class now stands to partake in a settlement that exceeds the recent median settlement values in securities class actions.[4]

As set forth below, the Settlement easily falls within the range of reasonableness, and warrants preliminary approval. Moreover, as detailed in the chart attached to the Monteverde Decl. as Exhibit 2, this motion and the Settlement satisfy this Court's Procedural Guidance for Class Action Settlements.[5]

## II.    HISTORY OF THE LITIGATION

### A.    COMMENCEMENT OF THE ACTION

Lead Plaintiff filed this Action on June 9, 2018, against Oclaro and its board of directors (the "Defendants") alleging violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the acquisition of Oclaro by Lumentum via a materially false and misleading proxy statement ("Proxy"). ECF No. 1. The Merger closed on December 10, 2018. On April 15, 2019, Lead

---

opined that Oclaro shareholders could not prove loss causation/damages in their subsequent expert reports.

[4] *See* Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, NERA Economic Consulting, at 13 (Jan. 23, 2023), available at https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_Trends.pdf. The report notes that the median settlement value was $8 million in 2021, and $13 million in 2022. *Id.*

[5] Exhibit 2 to the Monteverde Decl. specifically sets forth each of this District's numerical guidelines and provides citations to the relevant pages of the Stipulation, its ancillary exhibits, and this motion to affirm compliance.

Plaintiff filed the Amended Class Action Complaint (the "Amended Complaint") – the operative pleading in the Action.  ECF No. 20.

The Action has been extensively litigated by Lead Plaintiff and vigorously contested by Defendants.  Lead Plaintiff successfully defeated challenges to the Amended Complaint, including Defendants' Motion to Dismiss, which was granted in part and denied in part (ECF No. 43), as well as Oclaro's Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) (ECF No. 143). The parties engaged their respective experts, with Lead Plaintiff retaining William Jeffers, CFA of The Griffing Group and Prof. Stephen J. Lubben, and Defendants engaging Prof. Steven Davidoff Solomon, Prof. Andrea Eisfeldt and Prof. Wayne D. Hoyer.  On August 16, 2022, Lead Plaintiff filed a Motion for Class Certification (ECF No. 173), which was fully briefed and awaiting oral argument.  A jury trial was proposed to be scheduled for May 9, 2023.  ECF No. 145.

**B.    DISCOVERY UNDERTAKEN BY LEAD PLAINTIFF**

Lead Plaintiff conducted thorough fact and expert discovery. Specifically, Lead Plaintiff served eleven subpoenas and propounded multiple written discovery requests, and ultimately obtained discovery from Defendants and third parties that included more than 400,000 pages of documents containing e-mails, board materials, financial data and projections (including native files), analyst reports, and other Merger related documentation. Lead Plaintiff likewise responded to written discovery and produced documents to Defendants.  The parties conducted eleven fact witness depositions, and each of the parties' five, respective experts were deposed.  Lead Plaintiff also obtained an affidavit from Ford Tamer, CEO of Inphi, a bidder in the sales process referred to as "Company D" in the Proxy, as well as affidavits from Glass Lewis and ISS related to their processes in recommending mergers.   Moreover, Plaintiff prepared and mailed surveys to approximately 2,000 potential class members to ascertain their views regarding the issues raised in this litigation.

### C.    Settlement Negotiations and Mediation

Fact and expert discovery were completed when Lead Plaintiff and Lead Counsel agreed to the Proposed Settlement. In light of such discovery, Lead Plaintiff and Lead Counsel were well-positioned to evaluate the case, including the likelihood of establishing subjective and objective falsity, loss causation, the potential recoverable damages, and the risks associated with various other legal issues.

The parties first agreed to attend mediation before mediator Michelle M. Yoshida, Esq. of Phillips ADR Enterprises on August 3, 2021. Lead Counsel thoroughly prepared for mediation, provided a comprehensive written mediation submission and advocated for Lead Plaintiff and the prospective class during the initial settlement discussions. After a full day mediation, the parties were not able to reach a settlement. Thereafter, Lead Plaintiff and Lead Counsel proceeded to zealously litigate this case. On January 10, 2023, the parties attended a second mediation with Ms. Yoshida.  The parties prepared further written mediation statements, and after nearly fourteen hours of adversarial in-person negotiations the parties reached an agreement in principle, executing a term sheet memorializing the key terms of the Settlement including the $15,250,000 common fund.  Lead Plaintiff filed a Notice of Settlement on January 18, 2023.  ECF No. 187.

## III.    TERMS OF THE PROPOSED SETTLEMENT

On March 16, 2023, the Settling Parties executed the Stipulation, which sets forth the full terms of the proposed Settlement resolving the claims of the Settlement Class. Subject to Court approval of the Settlement, Oclaro shall cause the Settlement Amount of $15,250,000 to be paid into the Escrow Account and distributed to the Authorized Claimants in accordance with the Plan of Allocation described fully in the Notice (attached as Exhibit A-1 to the Stipulation, which is Exhibit 1 to the Monteverde Declaration).

## IV.    ARGUMENT

### A.    The Proposed Settlement Should Be Preliminarily Approved

Rule 23(e) of the Federal Rules of Civil Procedure requires that the parties seek court approval of any class settlement. The process involves two stages: preliminary approval followed

by notice to the class, and then final approval after a hearing. *Relente v. Viator, Inc.*, No. 12-cv-05868-JD, 2014 U.S. Dist. LEXIS 160350, *5 (N.D. Cal. Nov. 14, 2014) (Donato, J.). "The court's task at the preliminary approval stage is to determine whether the settlement falls within the range of possible approval." *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 516-17 (N.D. Cal. 2020) (internal quotation marks omitted). Lead Plaintiff respectfully submits that the Settlement satisfies the standard for preliminary approval, and eventually final approval, because it is fair, reasonable, and adequate.

Under Rule 23(e), a court reviewing a settlement proposal for approval must consider whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided to the class is adequate; and (4) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). A comprehensive assessment of all factors cannot be made by the Court until the final approval hearing after such time as any class member has had a chance to object and/or opt out. Thus, at the preliminary approval stage the Court is to consider whether it "will likely be able to . . . (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Preliminary approval is warranted if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies and does not improperly grant preferential treatment to class representatives or segments of the class; and (3) falls within the range of possible approval. *In re Facebook Biometric Info. Privacy Litig.*, No. 15-CV-03747-JD, 2020 U.S. Dist. LEXIS 151269, *9 (N.D. Cal. Aug. 19, 2020) (Donato, J.) (internal quotations omitted). The proposed Settlement readily satisfies this inquiry.

### 1.    The Settlement Class Has Been Vigorously Represented

For more than four years, Lead Counsel has zealously represented the interests of the Settlement Class. Lead Counsel has significant expertise in securities litigation[6] and is recognized

---

[6] *See* Monteverde Decl. Exh. 3 (firm resume).

as a preeminent securities firm, listed in the Top 50 in the 2018-2022 ISS Securities Class Action Services Report in recognition of the substantial settlements achieved by the firm on behalf of shareholders.  Further, Lead Counsel is responsible for improving the legal standards investors must prove under Section 14 of the Exchange Act. In a significant victory in *Varjabedian v. Emulex Corp.*, 888 F.3d 399 (9th Cir. 2018), Lead Counsel created a 5-to-1 circuit split that lowered the standard of liability under Section 14(e) of the Exchange Act in the Ninth Circuit. Lead Counsel then successfully preserved this victory by obtaining dismissal of a writ of certiorari as improvidently granted at the United States Supreme Court. *Emulex Corp. v. Varjabedian*, 139 S. Ct. 1407 (2019).

Moreover, Lead Counsel's conclusion that the Settlement is fair, adequate, and reasonable is predicated on their knowledge of the strengths and weaknesses of the claims of the Settlement Class based on the evidence adduced through fact and expert discovery, as well as Lead Counsel's analysis of Defendants' legal and factual arguments, and the potential risk that the Court or a jury may have ruled in favor of Defendants – resulting in no recovery for the Settlement Class.  *See In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (holding that the "recommendation of counsel" that was familiar with the dispute and had expertise in securities litigation weighed in favor of approving the settlement).  Thus, Lead Counsel's experience in securities litigation, its familiarity with comparable cases and settlements and its zealous prosecution of the Litigation to date, make counsel well-suited to evaluate the fairness of the Settlement and to determine whether it is in the best interests of the Settlement Class.  Lead Plaintiff has also endeavored to protect the interests of the proposed Settlement Class by, among other things, engaging experienced Lead Counsel to prosecute the Litigation, responding to written discovery, and sitting for a deposition.  In sum, Lead Counsel's and Lead Plaintiff's zealous representation weigh in support of preliminary approval of the proposed Settlement.

1

### 2. The Settlement is the Result of Good Faith, Arm's-Length Negotiations

2

3    The Ninth Circuit and district courts within this circuit, "put a good deal of stock in the

4    product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*,

5    563 F.3d 948, 965 (9th Cir. 2009). Arm's-length negotiations typically take place over an extended

6    period of time with experienced counsel on both sides, each with an understanding of the strengths

7    and weaknesses of their own and the opposing party's claims. *In re Tableware Antitrust Litig.*, 484

8    F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). Since the Settlement was reached prior to class

9    certification, courts in the Ninth Circuit "must also ensure that the class settlement is not the

10   'product of collusion among the negotiating parties.'" *Wong v. Arlo Techs., Inc.,* No. 5:19-CV-

11   00372-BLF, 2021 U.S. Dist. LEXIS 58514, at *19 (N.D. Cal. Apr. 19, 2021) (citing *In re Bluetooth*

     *Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011)).

12   The Settlement at issue here is the product of serious, informed, non-collusive negotiations

13   between the parties after extensive litigation and two mediations before an experienced mediator.

14   *Facebook Biometric Info. Priv. Litig.*, 2020 U.S. Dist. LEXIS 151269, at *10-11 (settlement

15   deemed the "product of serious, informed and noncollusive negotiations" where it was achieved

16   after three mediations and "considerable time and effort by the mediator and the parties"). Ms.

17   Yoshida has been a mediator for more than 15 years, serving as mediator for cases regarding

18   complex business litigation including securities and derivative actions. Philips ADR, Michelle

19   Yoshida, Esq., https://www.phillipsadr.com/ bios/michelle-yoshida/ (last visited Feb. 6, 2023).

20   The participation of an independent mediator is a factor that weighs in favor of a finding of non-

21   collusiveness in settlement negotiations. *Moore v. Verizon Communs., Inc.*, No. C 09-1823 SBA,

22   2013 U.S. Dist. LEXIS 122901, *32 (N.D. Cal. Aug. 28, 2013) (citing *In re Bluetooth Headset*

23   *Prods. Liab. Litig.*, 654 F.3d at 938) (participation of a mediator is "a factor weighing in favor of

24   a finding of non-collusiveness."). Moreover, through the mediation process, the strengths and

25   weaknesses of the parties' claims and defenses were extensively debated.

26

27

28

The Settlement that followed the parties' second Mediation did not occur until January 2023, after the completion of fact and expert discovery. At the time of the second mediation, Lead Counsel had devoted thousands of hours to prosecuting the Litigation, engaging in substantial motion practice, an adversarial discovery process, and was in the process of developing Lead Plaintiff's claims for trial. As a result, Lead Plaintiff and Lead Counsel were well-positioned to evaluate the strengths and weaknesses of the claims and defenses at issue, as well as the fairness of the Settlement. Indeed, "[t]he use of an experienced private mediator and presence of discovery supports the conclusion that Plaintiff [was] armed with sufficient information about the case to broker a fair settlement." *De Leon v. Ricoh USA, Inc.*, No. 18-cv-03725-JSC, 2019 U.S. Dist. LEXIS 204442, at *29 (N.D. Cal. Nov. 25, 2019) (holding that "on balance, the Settlement Agreement appears to be the product of serious, informed, noncollusive negotiations" which "weighs in favor of preliminary approval").

### 3. The Settlement Has No Obvious Deficiencies and Does Not Improperly Grant Preferential Treatment to Lead Plaintiff or Segments of the Class

The Settlement has no obvious deficiencies and does not grant improper or preferential treatment to Lead Plaintiff or other segments of the Settlement Class. Under the Plan of Allocation, each Authorized Claimant that submits a valid, timely Proof of Claim will receive distribution from the Net Settlement Fund on a pro rata basis. Stipulation at pp. 22-23, Notice at 12. Therefore, assuming 100% of the shares in the Settlement Class submit a valid and timely Proof of Claim, the average distribution will be $0.09 per share owned (before the payment of Court-approved fees and expenses (estimated to be approximately $0.03 per share) and the cost of notice and claims administration).[7] Notice at 6. This means that every shareholder in the Settlement Class will receive equal treatment under the Plan of Allocation.

---

[7] The Settlement provides for reallocating any balance remaining in the Net Settlement Fund after the initial distribution on a pro rata basis among Authorized Claimants until the balance remaining in the Net Settlement Fund is *de minimis*, with any *de minimis* remainder being issued as a *cy pres* award to the ACLU Foundation of Northern California.

Lead Plaintiff intends to seek a service award relating to his representation of the Settlement Class in an amount up to $5,000 pursuant to 15 U.S.C. § 78u-4(a)(4), as reimbursement for his time and expenses in representing the Settlement Class. Lead Plaintiff performed his duties by responding to discovery, including collecting documents, answering interrogatories and requests for admission, sitting for a four-hour deposition, and otherwise communicating with Lead Counsel regarding developments in the litigation. ECF No. 173 at 5 and citations within. Lead Counsel believes a service award of this amount is fully supported by Lead Plaintiff's efforts throughout the Litigation. Such an award also would "not constitute inequitable treatment of class members" relative to Lead Plaintiff. *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 U.S. Dist. LEXIS 121886, at *26 (N.D. Cal. July 22, 2019); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (noting that incentive awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general"); *Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 266 (N.D. Cal. 2015) (collecting cases and noting that while such an award is discretionary, "[i]n this district, a $5,000 payment is presumptively reasonable" and "service awards "typically range from $2,000 to $10,000) *see also Todd v. STAAR Surgical Co.*, No. CV 14-5263 MWF (GJSx), 2017 U.S. Dist. LEXIS 176183, at *15-16 (C.D. Cal. Oct. 24, 2017) (collecting "numerous cases in which service awards of $10,000 or more are found reasonable").

With respect to the release, the claims in the Amended Complaint arise under the Exchange Act and are predicated on the Proxy and Merger. ECF No. 20. The definition of "Released Claims" in the Stipulation contains the typical language "to ensure that it applies to all appropriate persons…and to all appropriate claims," *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 947 (N.D. Cal. 2013), but is limited to what this Action is about—the Proxy and Merger. Specifically, the following emphasized language from the definition of "Released Claims" acts to limit the release in an appropriate manner: "[A]ny and all claims…that have been asserted, could have been asserted, or could be asserted in the future" against Defendants and their affiliates "that arise out

of or relate in any way to: *(i) the Action; (ii) the Merger, and (iii) the Preliminary and Definitive Proxy Statements issued by Oclaro in connection with the Merger (the "Proxy") or any other disclosures related to the Merger.*" Stipulation at p. 10. "As such, the release does not represent overreaching, or present a concern that class members are relinquishing more than would be warranted." *Fraley*, 966 F. Supp. 2d at 947. Thus, the Settlement has no obvious deficiencies and does not grant preferential treatment to Lead Plaintiff or to segments of the proposed Settlement Class.

### 4.    The Settlement Provides Meaningful Relief

This Settlement warrants preliminary approval because it is an excellent result given the numerous and substantial risks of further litigation – particularly given the unique hurdle of proving economic loss in a Section 14(a) case such as this one – the additional expenses associated with further litigation, and the complexity of the Action. While Lead Plaintiff believes the asserted claims have merit and are supported by the evidence obtained in discovery, Lead Plaintiff and the Settlement Class nevertheless faced significant obstacles to recovery. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (noting that evidence "amply justified" fairness of settlement amount upon final approval where, among other things, "plaintiffs themselves conceded that recovering more than the settlement consideration at trial would be difficult").

Following the Court's ruling on Defendants' motion to dismiss the Amended Complaint, the Action centered upon two of Lead Plaintiff's challenges to Oclaro's Proxy disclosures: (1) whether statements that management believed Oclaro's February 2018 Projections were "reasonably prepared on bases reflecting the best currently available estimates and good faith judgments of the management of Oclaro as to the future financial performance of Oclaro" were false and misleading; and (2) whether valuation ranges calculated by Oclaro's financial advisor, Jefferies LLC ("Jefferies") and derived from the February 2018 Projections misled Oclaro's shareholders. ECF No. 43 ("MTD Order") at 8-10.

However, Defendants have vehemently denied the claims asserted by Lead Plaintiff. With respect to the first allegation, Defendants argue that the February 2018 Projections were neither

false nor materially misleading, but were the end products of an extensive forecasting process that Oclaro began in November 2017, months before it received any offer from Lumentum. ECF No. 29 at 13-15; ECF No. 184 at 6-7. As to Lead Plaintiff's remaining claim regarding Jefferies' calculated valuation ranges, Defendants argued that the February 2018 Projections were prepared by Oclaro's management at the request of Jefferies because Jefferies required projections for five years to conduct its discounted cash flow analysis and that there is no evidence that the February 2018 Projections were created with the intent to produce lowered valuation figures for Oclaro. ECF No.184 at 2. The Court even noted in its MTD Order that Defendants' vigorous defense of management's decision to revise Oclaro's projections in January and February 2018 "may ultimately prevail." ECF No. 43 at 9-10. In opposing Lead Plaintiff's Motion for Class Certification, Defendants also argued that their forthcoming motion for summary judgment would present "undisputed facts demonstrate[ing]" that the February 2018 Projections were nearly identical to the January 2018 Projections, (which Lead Plaintiff had also challenged, but the Court had already rejected in its MTD Order) and that the only difference between the two sets of projections was that the February 2018 Projections added another year of projected results – for 2022 – in contrast to the January 2018 Projections, which ended in 2021. ECF No. 177 (Opp. to Class Cert. Mot.) at 10. Thus, establishing Defendants' liability at summary judgment or trial would be difficult and complex, with success far from certain.

Moreover, even if liability were established and Lead Plaintiff defeated Defendants' anticipated motion for summary judgment, there would still be a substantial risk that he could not prove loss causation or damages in excess of the Settlement Amount at trial. Although Lead Plaintiff contends that his theory of loss causation and economic loss are appropriate and that damages could range from $196.7 million to $599.7 million, or $1.09 to $3.33 per share, Defendants have repeatedly emphasized that Lead Plaintiff cannot establish causally-related damages, because the Oclaro stockholders received the full benefit that Oclaro bargained for in the Merger and the consideration was the best price reasonably available for Oclaro's stockholders and a premium to Oclaro's trading price. ECF No. 184 at 6. In particular, the Merger consideration

provided that each share of Oclaro stock would be exchanged for $5.60 in cash and 0.0636 shares of Lumentum stock.  ECF No. 20 at 20, ¶77.  That Lumentum's stock declined between the time of signing and the date the Merger closed, Defendants argued, was both well-known and fully disclosed by Lumentum and constituted an intervening cause that destroyed any alleged causation. ECF No. 184 at 7.  Given the challenges faced by Lead Plaintiff in establishing liability and damages, the proposed Settlement is a good outcome for the Settlement Class.  *Extreme Networks*, 2019 U.S. Dist. LEXIS 121886, *25 (noting that "Securities actions, in particular are often long, hard-fought, complicated, and extremely difficult to win" facing "obstacles include[ing] challenges to the material falsity of each alleged misstatement, class certification challenges, loss causation and damages challenges, and the risks inherent in a 'battle of the experts' of complex economic theories in a jury trial"). The Settlement eliminates the risks of continued litigation, which warrants preliminary approval.

Lead Counsel is pleased with the proposed Settlement because it is an excellent result for the Settlement Class based on a review of settlements obtained in merger-related cases brought under Section 14 of the Exchange Act. Exh. 4 to Monteverde Decl.  As illustrated by the accompanying chart, the Settlement compares favorably with or exceeds other similar settlements for relatively larger deals (*i.e.*, ones with higher per share prices).

### B.   PROVISIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS APPROPRIATE

In granting preliminary settlement approval, the Court should also conditionally certify the Settlement Class for purposes of effectuating the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. Courts have long acknowledged the propriety of a settlement class. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-22 (1997). As demonstrated below, the proposed Settlement Class satisfies the requirements of Rule 23(a) and Rule 23(b)(3).

Notably, there are no substantive differences between the Settlement Class as defined in the Stipulation and the class proposed in Lead Plaintiff's Amended Complaint and Motion for

Class Certification, as each were defined to capture Oclaro shareholders who were harmed by Defendants' alleged wrongdoing in conjunction with the Proxy and resulting Merger.[8]

### 1.     The Settlement Class Satisfies the Requirements of Rule 23(a)

Class certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims/defenses of the class representative are typical of the claims/defenses of the class ("typicality"); and (4) the class representative will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a); *Amchem*, 521 U.S. at 613; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). As discussed below, the proposed Settlement Class meets each of these requirements.

**Numerosity**. Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Courts may infer that, when a corporation has millions of shares trading on a national exchange, the numerosity requirement is met. *See In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).

Oclaro's records produced in discovery indicate there were 1,620 recordholders and 32,023 non-objecting beneficial owners, and there were 170,656,376 shares of Oclaro common stock

---

[8] The Amended Complaint was filed on behalf of Lead Plaintiff and the other former public stockholders of Oclaro against Oclaro and the members of the Company's board of directors for their violations of §14(a) and §20(a) of the Exchange Act in connection with the Merger. ECF No. 20 at ¶ 1. The Amended Complaint generally defined the proposed "Class" as the "former public stockholders of Oclaro" (ECF No. 20 at ¶ 26). The Stipulation defines the Settlement Class and the Settlement Class Period with the requisite level of specificity, anchored by the appropriate dates to encompass those Oclaro shareholders who held shares as of the record date for voting on the Merger and were alleged to be harmed by the Merger. *See* Stipulation at 11 (defining the Settlement Class as "all record and beneficial holders of common stock of Oclaro who held such stock during the period from and including May 15, 2018, the record date for voting on the Merger of Oclaro and Lumentum, through and including December 10, 2018, the date the Merger closed, including any and all of their respective predecessors, successors, trustees, executors, administrators, estates, legal representatives, heirs, assigns and transferees[]" and defining "Settlement Class Period" as "the period commencing on May 15, 2018 and ending on December 10, 2018, inclusive."). The class definition set forth in Lead Plaintiff's Motion for Class Certification is in accord. ECF No. 173 at 1.

issued and outstanding as of the record date.  ECF. No. 29-3 at 7. The numerosity requirement is plainly satisfied here, as Lead Plaintiff estimates that there are in excess of 167 million shares of Oclaro common stock in the Settlement Class (Notice at 11) that are held by hundreds to thousands of shareholders across the United States.

**Commonality**. Rule 23's commonality requirement does not mandate that *all* questions of law and fact be common to all class members, rather "commonality only requires a single significant question of law or fact." *Mazza v. Am. Honda Motor Co.*, 66 F.3d 581, 589 (9th Cir. 2012), *overruled in part on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F. 4th 651, 682 n.32 (9th Cir. 2022)).

Here, the significant common questions of law or fact include whether Defendants violated Sections 14(a) and 20(a) of the Exchange Act by preparing and disseminating a materially false and misleading Proxy, and whether Lead Plaintiff and the Settlement Class were damaged as a result.  *In re Hot Topic, Inc. Sec. Litig.*, No. CV13-02939 SJO (JCx), 2014 U.S. Dist. LEXIS 155544, *12 (C.D. Cal. Nov. 3, 2014) (certifying class in Section 14(a) action).  Accordingly, the Settlement Class satisfies the commonality requirement.

**Typicality**. Rule 23(a)(3) requires that the class representative's claims be "typical" of those of the other class members. Under Rule 23(a)'s permissive standards, a class representative's claims are "typical" if they are reasonably co-extensive with those of the other class members. The claims need not be substantially identical. *See Amchem*, 521 U.S. at 625; *Hanlon*, 150 F.3d at 1020.  As mentioned above, Lead Plaintiff and the other Settlement Class Members all held Oclaro common stock during the Settlement Class Period, and their claims arise from the allegedly misleading Proxy and resulting Merger. Thus, the typicality requirement is satisfied.

**Adequacy**.  Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Legal adequacy in the Ninth Circuit is determined using the following two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Here, Lead Plaintiff and Lead Counsel have no conflicts of interest with each other or any of the other Settlement Class Members. Their commitment to obtaining the best possible result for the Settlement Class is evinced by the adversarial history of this Litigation, discussed above. Furthermore, Lead Counsel has invested considerable time and resources in prosecuting this Action, which enabled them to negotiate an outstanding Settlement for the Settlement Class.  Lead Plaintiff has also faithfully represented the Settlement Class.  He engaged experienced attorneys to vigorously litigate the case, and has demonstrated both that he has a sufficient understanding of the Action and that his interests align with the proposed Settlement Class.  ECF No. 173 at 5 and citations within; ECF No. 181 at 1-5.  In sum, the adequacy requirement is satisfied, and the Settlement Class meets all four requirements for class certification under Rule 23(a).

### 2.    The Settlement Class Meets the Requirements of Rule 23(b)(3)

Lead Plaintiff seeks certification of the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3). Certification under Rule 23(b)(3) requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  The court may consider that the class will be certified for settlement purposes only, and thus a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 618.

### a.    Common Legal and Factual Questions Predominate

Here, questions common to all Settlement Class Members substantially predominate over any individualized questions. Such common issues are: (1) whether the Proxy contained materially false or misleading statements; and (2) whether the alleged material misrepresentations and omissions caused recoverable losses. *See In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 300 (D. Del. 2003); *In re Hot Topic, Inc. Sec. Litig.*, 2014 U.S. Dist. LEXIS 155544, at *17. The same alleged course of conduct by Defendants forms the basis of all Settlement Class Members' claims. As set forth above, there are numerous common issues relating to Defendants' liability at the core of this Action, which predominate over any individualized issues. Therefore, the predominance requirement of Rule 23(b)(3) is met.

b.    **A Class Action is Superior to Other Methods of Adjudication**

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). In securities cases predicated on false or misleading statements that were disseminated to numerous shareholders, class actions are superior to other methods of adjudication because they promote judicial economy. *See Desai v. Deutsche Bank Sec. Ltd*, 573 F.3d 931, 937 (9th Cir. 2009); *In re Seagate Tech. II Sec. Litig.*, 843 F. Supp. 1341, 1351-52 (N.D. Cal. 1994).

In this case, the Stipulation provides Settlement Class Members with the ability to obtain prompt and certain relief through well-defined administrative procedures assuring due process. This includes the right of any Settlement Class Member dissatisfied with the Settlement to object to it, or to exclude themselves from the Settlement Class. The Settlement also relieves the substantial judicial burdens that would result from repeated adjudication of the same issues in hundreds to thousands of individualized trials against Defendants, by affording settlement relief to the Settlement Class through certification as a class action. Since the parties seek to resolve this Action through a settlement, any manageability issues that could have arisen at trial are irrelevant. *See Amchem*, 521 U.S. at 620. Finally, the complexity of the claims asserted against Defendants and the high cost of individualized litigation make it unlikely that the vast majority of Settlement Class Members would be able to obtain relief without class certification. For all the reasons mentioned, a class action is a superior method of adjudication for this Litigation.

In sum, the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, and preliminary certification of the proposed Settlement Class is appropriate.

### C. THE NOTICE PROGRAM SATISFIES DUE PROCESS REQUIREMENTS, THIS COURT'S PROCEDURAL GUIDANCE FOR CLASS ACTION SETTLEMENTS, AND IS SUFFICIENT UNDER RULE 23 AND THE PSLRA

Rule 23(e)(1) of the Federal Rules of Civil Procedure requires that all members of the class be notified of the terms of any proposed settlement. The notice must state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members. Fed. R. Civ. P. 23(c)(2)(B). Furthermore, in securities class actions, the PSLRA requires that the notice provide the following information:

> (1) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis;" (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, a statement from each settling party concerning the issue or issues on which the parties disagree;" (3) "a statement indicating which parties or counsel intend to make . . . an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought;" (4) "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members;" and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement."

15 U.S.C. § 78u-4(a)(7).

Here, the proposed form of the Notice (Stipulation Exhibit A-1) meets these requirements. The Notice describes the Settlement and sets forth the Settlement Amount in the aggregate and on an average per share basis. *Id*. at 5, 11-12. The Notice describes the Settling Parties' disagreement over damages and liability. *Id*. at 3-5.  The Notice sets out the limits on attorneys' fees and expenses Lead Counsel intends to seek from the Settlement Fund, and describes the proposed Plan of Allocation. *Id*. at 2-5, 11-12. The Settling Parties agreed on the form of the Notice to be disseminated to all persons who fall within the definition of the Settlement Class and whose names and addresses have been or can be identified from or through Oclaro's transfer records. The Notice

also summarizes the nature, history, and status of the Action, sets forth the definition of the Settlement Class, states the Settlement Class' claims and issues, discusses the rights of persons who fall within the definition of the Settlement Class (including the right to be excluded or object to Settlement and all relief requested in connection thereto), and summarizes the reasons the Settling Parties are proposing the Settlement. The Notice also contains instructions on how to access the case docket via PACER or in person at the Court. *Id*. at 11.

Further, the Notice includes detailed information on the process and requirements for requesting exclusion from the Settlement Class. *Id*. at 8-9. It also informs the Settlement Class of what will happen if they do nothing at all. *Id*. at 11. The Notice provides instructions on the timing and process for completing and submitting the Proof of Claim form that accompanies the Notice. *Id*. at 6-7. The Notice also informs Settlement Class Members that copies of the Notice and Proof of Claim form may be obtained by writing the Claims Administrator, or by accessing the documents on the Settlement website.

The Notice concisely explains the Settlement Class Members' opt-out rights, including the timing and method to opt-out. *Id*. at 2, 8. For those Settlement Class Members who do not wish to opt-out, the Notice provides that they can object to the Settlement or the request for fees and expenses. *Id*. at 9-10. The Notice also explains the difference between objecting to the Settlement and opting out of the Settlement. *Id*. at 2, 10.

The Notice will set forth the date, time, and place of the Final Approval Hearing, clearly states that the date may change without further notice, and explains how and where Settlement Class Members may confirm beforehand to ensure that the date and/or time has not changed. *Id*. at 10. It also sets forth the procedures for commenting on the Settlement, and includes addresses for the Court and Lead Counsel. *Id*. at 9-10. The Claims Administrator will cause a copy of the Notice and Proof of Claim and Release to be emailed to Settlement Class Members for whom an email address exists in Oclaro's shareholder list and mailed by First-Class Mail to all Settlement Class Members who can be identified with reasonable effort, and will post the Notice and Proof of Claim and Release on a settlement-related website. The Claims Administrator will also send the

Notice to entities which commonly hold securities in "street name" as nominees for the benefit of their customers who are the beneficial purchasers. *Id*. at 12. Lead Plaintiff further proposes to distribute electronically a Summary Notice through *PRNewswire*. The Notice and Summary Notice are attached to the Stipulation as Exhibits A-1 and A-3. Lead Counsel believes that the proposed notice plan is the best plan available and will reach all the investors (and/or its brokers) that are potential members of the Settlement Class.

These proposed methods of giving notice (similar, if not identical, to the methods used in countless other securities class actions) have been "found to be satisfactory and meet due process." *In re Celera Corp. Sec. Litig.*, No. 5:10-CV-02604-EJD, 2015 U.S. Dist. LEXIS 42228, at *18-20 (N.D. Cal. Mar. 31, 2015) (due process satisfied where notice program entailed mailing by first-class mail, publication in *Investor's Business Daily* and maintenance of a settlement website by claims administrator for key documents). As such, the contents of the Notice and Summary Notice and methods of providing notice satisfy the requirements of Rule 23(e), the PSLRA and this Court's Procedural Guidance for Class Action Settlements. Accordingly, the Court should approve the proposed Notice and Summary Notice.

### D.   ANTICIPATED LEGAL FEES AND EXPENSES

As set forth in the Notice, Lead Counsel intends to move for attorneys' fees of no more than one-third of the Settlement Fund, plus expenses not to exceed $400,000, which includes Lead Counsel's expert fees of $289,011.01. Moreover, the expense request will not include travel/lodging related to hearings or depositions. Lead Counsel respectfully submits that its anticipated fee request is well supported by "(1) the results achieved for the class; (2) the complexity of the case and the risk of and expense to counsel of litigating it; (3) the skill, experience, and performance of counsel on both sides; (4) the contingent nature of the fee; and (5) fees awarded in comparable cases." *In re Capacitors Antitrust Litig.*, No. 3:14-cv-03264-JD, 2018 U.S. Dist. LEXIS 169764, at *44 (N.D. Cal. Sept. 21, 2018) (Donato J.) (citing the Ninth Circuit's *Vizcaino* factors and noting that "[s]election of the benchmark or any other rate [] must be supported by findings that take into account all of the circumstances of the case).

A one-third fee of the $15,250,000 Settlement Amount would equate to $5,083,333.33. While Lead Counsel notes that additional time will be spent in connection with final approval and settlement administration, Lead Counsel's current lodestar exceeds the fee request and is $5,317,885.00, and thus a one-third fee of the Settlement Amount is less than the value of the time that Lead Counsel has expended in this case to date. Indeed, the requested fee would provide a negative multiplier to Lead Counsel, as their lodestar to date exceeds the fee requested. Exh. 5 to Monteverde Decl. A fee award calculated as a percentage of a common fund that is in line with counsel's lodestar is reasonable. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. MDL 3:07-md-1827 SI, 2011 U.S. Dist. LEXIS 154287, at *2 (N.D. Cal. Dec. 27, 2011) ("Multiples of 1.25 and under are well within the ranges approved by the Ninth Circuit and the courts in this District.").

Moreover, a fee request of one-third of the Settlement Amount is in line with fees routinely granted in complex class actions such as this one. *See, e.g. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (affirming award of one-third of the total recovery); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (33% award "for attorneys' fees is justified because of the complexity of the issues and the risks"); *Romero v. Producers Dairy Foods, Inc.*, No. 1:05cv0484 DLB, 2007 U.S. Dist. LEXIS 86270, at *4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33% of the common fund, and stating "'[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery'" *citing* 4 Newberg and Conte, Newberg on Class Actions § 14.6 (4th ed. 2007)). Indeed, fee awards in securities class actions often exceed 25% because such cases are especially expensive and risky, *see, e.g., Stanger v. China Electric Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016), and "whether the case was risky for class counsel" is a pertinent factor. *In re In re Facebook Biometric Info. Privacy Litig.*, 522 F. Supp. 3d 617, 631 (N.D. Cal. 2021) (Donato, J.). The risk Lead Counsel undertook here is magnified by the fact that it is a boutique firm with six attorneys, and litigating this Action required devoting a significant amount of the firm's resources and foregoing other opportunities. *See Denton v. Pennymac Loan Servs., LLC*, 252 F.

Supp. 3d 504, 518 (E.D. Va. 2017) (counsel "is a small law firm and thus representing a client on a contingent fee . . . basis necessarily involved loss of other opportunities.").

Additionally, a review of fee awards in cases involving "common funds of comparable size[,]"*Facebook Biometric Info. Privacy Litig.*, 522 F. Supp. 3d at 632, suggests the market rate fee award in such cases is approximately 33%. *See Davis v. Yelp, Inc.*, No. 18-cv-00400-EMC, 2023 U.S. Dist. LEXIS 40323, at *6 (N.D. Cal. Jan. 27, 2023) (awarding 33% of $22.25 million common fund in securities case and collecting cases awarding same percentage of similarly sized common funds); Exh. 4 to Monteverde Decl. (summarizing recent comparable Section 14 class settlements). As Lead Counsel will further demonstrate in their motion for an award of attorneys' fees, an award of one-third of the Settlement Amount is warranted after "consider[ing] all the circumstances of the case[.]" *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

With respect to Notice and Administration Costs, Lead Counsel has chosen RG/2 Claims Administration LLC ("RG/2") as the proposed Claims Administrator. Lead Counsel considered three bids from potential claims administrators in making this decision. Lead Counsel selected RG/2 because their proposal outlined the most reasonable estimated cost with respect to the administration services they would be providing. Specifically, RG/2's proposal estimated administrative costs of $247,445.00, whereas the proposals Lead Counsel received from Rust Consulting and Gilardi & Co. LLC were $283,234.00 and $346,000.00, respectively. RG/2's estimated costs are also reasonable in light of Lead Counsel's experience in similar settlements. The notice and administration costs will be paid out of the Settlement Amount.

Lead Plaintiff also selected RG/2 because Lead Counsel has had positive experiences with RG/2 in other class action settlements. In the past two years, RG/2 has served as claims administrator for Lead Counsel in the following class action settlements: *Baker v. McAdams et al.*, No. 21STCV07569 (Los Angeles Super. Ct.) ($3 million settlement in 2023), *Brown v. Papa Murphy's Holdings, Inc.*, No. 19-cv-05514-BHS-JRC ($2.4 million settlement in 2022), and *Plant v. Jaguar Animal Health, Inc.*, No. 3:17-cv-04102-RS (N.D. Cal.) ($2.6 million settlement in 2021). Given RG/2's experience and Lead Counsel's previous work with RG/2 as described in

22

Exhibit 6, the estimated claim rate is 25%.  As demonstrated by the accompanying Declaration of William W. Wickersham (Exh. 6 to Monteverde Decl.), which addresses RG/2's procedures for securing class member data and its maintenance of insurance for errors, the proposed settlement administration also satisfies this Court's Procedural Guidance for Class Action Settlements.

### E.    PROPOSED SCHEDULE OF EVENTS

The proposed Preliminary Approval Order includes the following schedule:

| | |
|---|---|
| Notice emailed/mailed to the Settlement Class | 14 calendar days after entry of the Preliminary Approval Order |
| Summary Notice published | 3 calendar days after entry of the Preliminary Approval Order |
| Deadline for filing brief in support of Lead Counsel's request for an award of attorneys' fees and expenses and any service award to Lead Plaintiff | 77 calendar days prior to the Final Approval Hearing |
| Last day for submitting Proof of Claim and Release forms | 42 calendar days prior to the Final Approval Hearing or such other time as set by the Court |
| Deadline for requesting exclusion from the Settlement Class and objecting to the Settlement, Plan of Allocation, or request for an award of attorneys' fees and expenses | 42 calendar days prior to the Final Approval Hearing |
| Deadline for filing brief in support of the Settlement, certification of the Settlement Class and Plan of Allocation | 35 calendar days prior to the Final Approval Hearing |
| File declaration confirming mailing and publishing Notice and Summary Notice | 7 calendar days prior to the Final Approval Hearing |
| Reply papers in support of the Settlement, Plan of Allocation, or request for an award of attorneys' fees and expenses | 7 calendar days prior to the Final Approval Hearing |
| Final approval hearing | At the Court's convenience, but no less than 120 calendar days after entry of the Preliminary Approval Order |

*See* Preliminary Approval Order (Exhibit A to the Stipulation) at 4-5, 7.

## V.    CONCLUSION

For the foregoing reasons, the proposed Settlement warrants this Court's preliminary approval, and entry of the Preliminary Approval Order.

1    Dated: March 16, 2023                    Respectfully submitted,

2                                             /s/ Juan E. Monteverde
                                              Juan E. Monteverde (NY Reg. No. 4467882)
3                                             **MONTEVERDE & ASSOCIATES PC**
                                              Juan E. Monteverde (*admitted pro hac vice*)
4                                             Miles D. Schreiner (*admitted pro hac vice*)
                                              The Empire State Building
5                                             350 Fifth Avenue, Suite 4405
                                              New York, NY 10118
6                                             Tel: (212) 971-1341
                                              Fax: (212) 202-7880
7                                             Email: jmonteverde@monteverdelaw.com
                                                      mschreiner@monteverdelaw.com
8

9                                             David E. Bower SBN 119546
10                                            **MONTEVERDE & ASSOCIATES PC**
                                              600 Corporate Pointe, Suite 1170
11                                            Culver City, CA 90230
                                              Tel: (310) 446-6652
12                                            Fax: (212) 202-7880
                                              Email:  dbower@monteverdelaw.com
13

14                                            *Counsel for Lead Plaintiff and*
                                              *Lead Counsel for the Putative Class*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 3:18-cv-03435-JD