Juan E. Monteverde (admitted *pro hac vice*, NY Reg. No. 4467882)
**MONTEVERDE & ASSOCIATES PC**
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, New York 10118
Tel: (212) 971-1341
jmonteverde@monteverdelaw.com

David E. Bower (SBN 119546)
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
dbower@monteverdelaw.com

*Counsel for Lead Plaintiff and*
*Lead Counsel for the Putative Class*

[additional counsel on signature page]

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| SAISRAVAN BHARADWAJ KARRI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OCLARO, INC., MARISSA PETERSON, EDWARD COLLINS, GREG DOUGHERTY, KENDALL COWAN, DENISE HAYLOR, IAN SMALL, BILL SMITH, and JOEL A. SMITH III,<br><br>Defendants. | Case No. 3:18-cv-03435-JD<br><br>**LEAD PLAINTIFF'S NOTICE OF MOTION, REVISED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: June 29, 2023<br>Time: 10:00 a.m.<br>Courtroom: 11 – 19th Floor<br>Judge: Hon. James Donato |

# **TABLE OF CONTENTS**

NOTICE OF MOTION ........................................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

I.   PRELIMINARY STATEMENT – THE SETTLEMENT IS FAIR GIVEN THE
     SIGNIFICANT RISKS OF FURTHER LITIGATION ........................................... 1

    A.   THE DIFFICULTY OF ATTACKING OCLARO MANAGEMENT'S BELIEFS AS INSINCERE ..... 2

    B.   THE MURKY LAW ON LOSS CAUSATION IN SECTION 14(a) MERGER CASES ................ 3

    C.   DEFENDANTS' CHALLENGES TO PLAINTIFF'S DAMAGES EXPERT AND HIS
       CALCULATIONS ................................................................................................. 3

    D.   THE SETTLEMENT COMPARES FAVORABLY TO OTHER SECTION 14(a) MERGER
       SETTLEMENTS, AND THERE ARE NO RECENT SECTION 14(a) TRIALS TO LOOK TO
       FOR GUIDANCE ................................................................................................. 6

II.  HISTORY OF THE LITIGATION ........................................................................ 7

    A.   COMMENCEMENT OF THE ACTION ................................................................. 7

    B.   DISCOVERY UNDERTAKEN BY PLAINTIFF ..................................................... 7

    C.   ARM'S LENGTH SETTLEMENT NEGOTIATIONS AND MEDIATION .................. 8

III. COMPLIANCE WITH PROCEDURAL GUIDANCE AND SATISFACTION OF THE
     RULE 23(e)/HANLON FACTORS ........................................................................ 8

    A.   PROCEDURAL GUIDANCE NO. 1: INFORMATION ABOUT THE SETTLEMENT ................... 9

    B.   PROCEDURAL GUIDANCE NO. 2: SETTLEMENT ADMINISTRATION ............................ 15

    C.   PROCEDURAL GUIDANCE NO. 3: THE PROPOSED NOTICE TO THE CLASS IS
       ADEQUATE ..................................................................................................... 16

    D.   PROCEDURAL GUIDANCE NOS. 4 AND 5: OPT-OUTS AND OBJECTIONS ....................... 17

    E.   PROCEDURAL GUIDANCE NO. 6: ATTORNEYS' FEES AND EXPENSES .......................... 17

    F.   PROCEDURAL GUIDANCE NO. 7: SERVICE AWARD TO PLAINTIFF .............................. 18

    G.   PROCEDURAL GUIDANCE NO. 8: CY PRES AWARDEES .............................................. 19

- i -

H. PROCEDURAL GUIDANCE NO. 9: TIMELINE ..................................................... 19

I. PROCEDURAL GUIDANCE 10: CLASS ACTION FAIRNESS ACT AND SIMILAR REQUIREMENTS................................................................................................. 20

J. PROCEDURAL GUIDANCE 11: COMPARABLE OUTCOMES .................................. 20

IV. ARGUMENT ........................................................................................................... 20

A. THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ..................... 20

1. The Settlement is the Result of Arm's Length Negotiations by Informed and Experienced Counsel.................................................................................. 20

2. The Settlement Has No Obvious Deficiencies and Does Not Improperly Grant Preferential Treatment to Plaintiff or Segments of the Class................... 22

3. The Settlement Falls Within the Range of Possible Approval Because it Provides Fair Relief to the Settlement Class and Compares Favorably to Settlements in Similar Cases ...................................................................... 22

B. CONDITIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS APPROPRIATE.................................................................................................... 23

1. The Settlement Class Satisfies the Requirements of Rule 23(a)........................ 23

a. Numerosity .......................................................................................... 24

b. Commonality ....................................................................................... 24

c. Typicality............................................................................................. 24

d. Adequacy ............................................................................................. 25

2. The Settlement Class Meets the Requirements of Rule 23(b)(3) ...................... 25

a. Common Legal and Factual Questions Predominate................................. 25

b. A Class Action is Superior to Other Methods of Adjudication ................... 26

C. THE NOTICE PROGRAM SATISFIES ALL REQUIREMENTS AND IS DESIGNED TO REACH AS MANY CLASS MEMBERS AS POSSIBLE ...................................................... 27

V. CONCLUSION ....................................................................................................... 29

APPENDIX A...............................................................Chart of Comparable Settlements

# TABLE OF AUTHORITIES

## CASES                                                                    PAGE(S)

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ................................................................. 24, 25, 26

*Baum v. Harman Int'l Indus.*,
   575 F. Supp. 3d 289 (D. Conn. 2021) ............................................... 3

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) ..................................................... 18

*In re Celera Corp. Secs. Litig.*,
   No. 5:10-CV-02604-EJD, 2015 U.S. Dist. LEXIS 42228 (N.D. Cal. Mar. 31, 2015) .......... 29

*In re Cooper Cos. Sec. Litig.*,
   254 F.R.D. 628 (C.D. Cal. 2009) ..................................................... 24

*Davis v. Yelp, Inc.*,
   No. 18-cv-00400-EMC, 2023 U.S. Dist. LEXIS 40323 (N.D. Cal. Jan. 27, 2023) .............. 18

*Desai v. Deutsche Bank Sec. Ltd.*,
   573 F.3d 931 (9th Cir. 2009) ......................................................... 26

*In re Extreme Networks, Inc. Sec. Litig.*,
   No. 15-cv-04883-BLF, 2019 U.S. Dist. LEXIS 121886 (N.D. Cal. July 22, 2019) ........ 18, 22

*In re Facebook Biometric Info. Priv. Litig.*,
   522 F. Supp. 3d 617 (N.D. Cal. 2021) ...................................... 13-14, 18

*In re Facebook Biometric Info. Priv. Litig.*,
   No. 15-cv-03747-JD, 2020 U.S. Dist. LEXIS 151269 (N.D. Cal. Aug. 19, 2020) ............... 20

*Fraley v. Facebook, Inc.*,
   966 F. Supp. 2d 939 (N.D. Cal. 2013) ................................................ 11

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .............................................. 8-9, 24, 25

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010) ......................................................... 11

*In re Hot Topic, Inc. Sec. Litig.*,
   No. CV 13-02939 SJO (JCx),
   2014 U.S. Dist. LEXIS 155544 (C.D. Cal. Nov. 3, 2014) ............................. 24, 25

*Mack v. Resolute Energy Corp.*,
   No. 19-77-RGA, 2020 U.S. Dist. LEXIS 46776 (D. Del. Mar. 18, 2020) .............................. 4

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ................................................ 24

*Medina v. NYC Harlem Foods Inc.*,
    No. 21-CV-1321 (VSB), 2022 U.S. Dist. LEXIS 73263 (S.D.N.Y. Apr. 21, 2022) ............... 9

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................ 17

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970) ................................................ 3

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F. 4th 651 (9th Cir. 2022) ................................................ 24

*In re Omnivision Techs.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................ 21

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ................................................ 17

*In re Resolute Energy Corp. Sec. Litig.*,
    No. 19-77-RGA, 2021 U.S. Dist. LEXIS 19193 (D. Del. Feb. 1, 2021) ................................................ 3

*Reyn's Pasta Bella, L.L.C. v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006) ................................................ 11

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................ 20, 22

*Romero v. Producers Dairy Foods, Inc.*,
    No. 1:05cv0484 DLB, 2007 U.S. Dist. LEXIS 86270 (E.D. Cal. Nov. 13, 2007) ................ 17

*In re Seagate Tech. II Sec. Litig.*,
    843 F. Supp. 1341 (N.D. Cal. 1994) ................................................ 26

*Shuman v. SquareTrade Inc.*,
    No. 20-cv-02725-JCS, 2023 U.S. Dist. LEXIS 34302 (N.D. Cal. Mar. 1, 2023) ...................... 13

*Stanger v. China Elec. Motor, Inc.*,
    812 F.3d 734 (9th Cir. 2016) ................................................ 18

*Todd v. STAAR Surgical Co.*,
    No. CV 14-5263 MWF (GJSx), 2017 U.S. Dist. LEXIS 176183 (C.D. Cal. Oct. 24, 2017) . 18

*In re Tracfone Unlimited Serv. Plan Litig.*,
    112 F. Supp. 3d 993 (N.D. Cal. 2015) ................................................ 13

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) .................................................................. 26

*Va. Bankshares v. Sandberg*,
   501 U.S. 1083 (1991) ................................................................. 3

*Vataj v. Johnson*,
   No. 19-cv-06996-HSG, 2
   021 U.S. Dist. LEXIS 75879 (N.D. Cal. Apr. 20, 2021) .......................... 14, 22-23

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ..................................................... 18

**STATUTES**

15 U.S.C. § 78u-4 .................................................................... 18, 27

28 U.S.C. § 1715 ..................................................................... 19

**RULES**

Fed. R. Civ. P. 12 ..................................................................... 7

Fed. R. Civ. P. 23 ................................................................ *passim*

**OTHER AUTHORITIES**

4 Newberg and Conte, *Newberg on Class Actions* § 14.6 (4th ed. 2007) ............. 18

ISS Insights, *Musk & Tesla Win Rare Securities Class Action Trial*, Feb. 14, 2023,
https://insights.issgovernance.com/posts/musk-tesla-win-rare-securities-class-action-trial/ .......... 6

J. McIntosh, S. Starykh & E. Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, (NERA Jan. 24, 2023),
www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_Trends.pdf ....... 6, 23

Laarni T. Bulan et al, *Securities Class Action Settlements: 2019 Review and Analysis* (Cornerstone Research) ..................................................................... 23

L.T. Bulan, L.E. Simmons, *Securities Class Action Settlements, 2022 Review and Analysis*,
Cornerstone Research (2023), www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf. ........................................ 23

1

**NOTICE OF MOTION**

2

**TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

3       PLEASE TAKE NOTICE that on June 29, 2023 at 10:00 a.m., or as soon thereafter as counsel

4 may be heard before the Honorable James Donato, United States District Judge, at the United States

5 Courthouse, United States District Court, Northern District of California, 450 Golden Gate Ave., San

6 Francisco, California, Lead Plaintiff Saisravan Bharadwaj Karri ("Plaintiff"),[1] will and hereby does

7 move for entry of the Proposed Order Preliminarily Approving Settlement and Providing for Notice

8 (Stipulation, Ex. A).

9       The grounds for this motion are that the proposed Settlement is within the range of what could

10 be found to be fair, reasonable, and adequate, such that notice of its terms may be disseminated to the

11 Settlement Class and a hearing for final approval scheduled.

12      This motion is supported by the following memorandum of points and authorities, the

13 accompanying Declaration of Juan E. Monteverde and the exhibits thereto, the previous filings in this

14 case, and such other and further representations as may be made by counsel at any hearing on this matter.

15

**STATEMENT OF ISSUES TO BE DECIDED**

16      Whether the proposed $15,250,000 Settlement warrants the Court's preliminary approval.

17

**MEMORANDUM OF POINTS AND AUTHORITIES**

18

**I.     PRELIMINARY STATEMENT – THE SETTLEMENT IS FAIR GIVEN THE SIGNIFICANT RISKS OF FURTHER LITIGATION**

19

20      Plaintiff has secured a $15,250,000 settlement, a meaningful recovery for the Settlement Class

21 given the significant risks associated with continuing to litigate this merger-related Section 14(a) case

22 through trial. On April 20, 2023, the Court denied preliminary approval and expressed reservations about

23 the adequacy of the Settlement Amount when compared to the best possible recovery if Plaintiff fully

24 ───────────

[1] All capitalized terms not defined herein have the same meanings as in the Stipulation of

25 Settlement dated March 16, 2023 ("Stipulation"), as modified by the Addendum to Stipulation of

26 Settlement ("Addendum") dated May 19, 2023. The Stipulation and Addendum are filed contemporaneously herewith as Exhibits 1 and 2 to the Declaration of Juan E. Monteverde in

27 Support of Plaintiff's Revised Motion for Preliminary Approval of Settlement ("Monteverde Decl."). The Addendum contains the revised Proof of Claim and Release.

28

prevailed at trial. Dkt. No. 195. The Court also conveyed concerns regarding the claim form and process, and the bases for the claims administrator's estimated cost. *Id.*

Plaintiff addresses the Court's comments regarding the claim form, process, and administration cost in the pertinent sections below, which are organized based upon the Court's Procedural Guidance for Class Action Settlements (the "Procedural Guidance Factors").

And, to address the Court's concern regarding the Settlement Amount, Plaintiff and Lead Counsel provide a detailed description of the challenges that would arise at summary judgment and trial, which militate in favor of the Settlement. Specifically, this Settlement is a fair and favorable outcome for the Settlement Class for the following independent reasons.

### A.    THE DIFFICULTY OF ATTACKING OCLARO MANAGEMENT'S BELIEFS AS INSINCERE

This case is predicated on a challenge to an opinion statement, *i.e.*, that Oclaro's projections in the Proxy "were reasonably prepared on bases reflecting the best currently available estimates and good faith judgments of the management of Oclaro as to the future financial performance of Oclaro." Order Re. Motion to Dismiss (Dkt. No. 43, at 7-10). Plaintiff thus needs to prove subjective falsity, *i.e.*, that Oclaro's management did not genuinely believe as much. Defendants have each testified that one of the primary reasons Oclaro's projections were reduced was because, after the December Projections were prepared, Oclaro made the strategic decision that it was going to exit its OCB business. While this strategic plan was not disclosed to the market or in the Proxy, Defendants' testimony on this point has been largely consistent. Thus, Plaintiff's ability to establish liability hinges on whether he can convince a jury that Defendants' primary rationale for reducing Oclaro's projections was a pretextual attempt to justify the reduction rather than a legitimate business decision. While Plaintiff has obtained some circumstantial evidence to challenge the reductions, he does not have a smoking gun or a witness that worked at Oclaro to contradict Defendants' explanations or impugn their credibility. Furthermore, Defendants have emphasized the lack of a strong motive for Oclaro management to lie about its opinions. Accordingly, the risk of failing to prove liability at trial is significant, and Plaintiff entered the Settlement weighing the real risk of no recovery for the Class.

**B.    THE MURKY LAW ON LOSS CAUSATION IN SECTION 14(a) MERGER CASES**

Even if Plaintiff prevailed on liability, loss causation poses a challenge in this case. Plaintiff's loss causation theory is that shareholders were misled into approving an acquisition that undervalued Oclaro, notwithstanding the fact that the merger consideration represented a 27% premium over Oclaro's stock price the day before the Merger. Although Plaintiff believes his loss causation theory is valid under Supreme Court precedent,[2] several recent lower court opinions have found the fact that shareholders received a premium over the trading price forecloses a finding of economic loss, because the merger consideration is "greater than the market value or actual value of the shares without consideration of the merger due to the existence of a merger premium." *In re Resolute Energy Corp. Sec. Litig.*, No. 19-77-RGA, 2021 U.S. Dist. LEXIS 19193, at *5, *10 (D. Del. Feb. 1, 2021) (citing 5 other opinions in support of proposition). If this Court agrees with the reasoning in such cases, the Class would be unable to prove loss causation as a matter of law. Simply put, the loss causation issue is far murkier and thus more challenging in a § 14(a) action arising from a merger than it is in Rule 10b-5 cases that seek losses incurred during a stock price drop.

**C.    DEFENDANTS' CHALLENGES TO PLAINTIFF'S DAMAGES EXPERT AND HIS CALCULATIONS**

Defendants have also raised challenges to the methodology of Plaintiff's damages expert. *See* Dkt. No. 177 (Defs.' Class Cert. Opp.) at pp. 15-20; Dkt. No. 177-8 (Expert Declaration of Steven Davidoff Solomon), at 11-12; Dkt. No. 178 (Expert Declaration of Andrea L. Eisfeldt, Ph.D.).[3] Defendants would raise the same challenges at summary judgment and seek to exclude Plaintiff's damages expert. If Defendants succeeded, Plaintiff would be unable to prove damages.

Moreover, if Plaintiff survived Defendants' *Daubert* motion, the damage valuations of Plaintiff's and Defendants' experts would vary substantially. Indeed, Defendants have made clear that their position is the Class has not incurred **any** damages at all because, amongst other reasons, "it is

---

[2] *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 389 (1970); *Va. Bankshares v. Sandberg*, 501 U.S. 1083, 1100 (1991); *see also Baum v. Harman Int'l Indus.*, 575 F. Supp. 3d 289, 299 (D. Conn. 2021).
[3] Professor Solomon and Dr. Eisfeldt further opined that Oclaro shareholders could not prove loss causation/damages in their subsequent expert reports.

virtually impossible to [prove] that if the merger had been voted down, [Oclaro] stock would have been trading at over" the merger consideration in the immediate future. *Mack v. Resolute Energy Corp.*, No. 19-77-RGA, 2020 U.S. Dist. LEXIS 46776, at *31 (D. Del. Mar. 18, 2020). Plaintiff recognizes that several courts have found this argument persuasive.

Furthermore, Plaintiff's damages calculations are subject to challenges that could lead to significant reductions. Plaintiff and his expert have developed two damages models. *See* Expert Report of William Jeffers, CFA ("Jeffers Report"), Dkt. No. 174-2 (filed under seal). Under one model, damages of $599.7 million were calculated utilizing supplemented December Projections, and are dependent upon Plaintiff's ability to successfully challenge the legitimacy of the January Projections (the "December Projections Damages Model"). *Id.* at p. 4, ¶ 5. However, as to this model, Defendants have argued that Plaintiff is prohibited from challenging the legitimacy of the January Projections in light of the Court's motion to dismiss order. *See* Dkt. No. 164. If Plaintiff may not challenge the legitimacy of the January Projections to prove his claims, then the $599.7 million damages calculation is unattainable.

Under the second model, damages of $196.7 million were calculated utilizing "Corrected February Projections" and are dependent upon Plaintiff's ability to successfully challenge the reasonableness of the metrics for 2022 that appear solely in the February Projections (the "Corrected February Projections Damages Model"). Jeffers Report, at p. 4, ¶ 6. Proving that either the January Projections or the February Projections were not management's reasonably prepared best estimates will be challenging, as Defendants have provided a plausible justification for the lower numbers. *Supra* §I.A.

The $15.25 million Settlement represents 7.75% of the maximum recovery **if** Plaintiff successfully undermines the legitimacy of the February Projections, and 2.54% of the maximum recovery **if** the January Projections can be successfully challenged. However, these figures are also subject to reduction given that the Merger Consideration was a mix of Lumentum stock and cash, which adds a further level of complexity.

Specifically, Plaintiff's damages figures are predicated on calculating losses as of the December 10, 2018 merger closing date, when Oclaro shareholders received the equivalent of $8.36 per share in a

mix of cash and Lumentum stock. Plaintiff's damages expert did not use the announced merger price of $9.99 per share, which was calculated based on the closing price of Lumentum stock on March 9, 2018, the last trading day before the merger agreement was announced. This $1.63 per share differential represents $293 million in the aggregate,[4] and was the result of Lumentum's stock price declining after the merger announcement, for reasons Defendants contend **were unrelated to the Proxy**. If Defendants succeed in their argument that any damages need to be measured against the implied price as of the merger's announcement ($9.99) rather than its closing ($8.36), that will foreclose Plaintiff from proving **any** damages under his "the February Projections were unreasonable" theory, as Plaintiff's expert has opined that the fair value of Oclaro stock is $9.45 per share under that theory. Jeffers Report, at p. 4, ¶ 6. Moreover, the $599.7 damages calculation built on the premise that Plaintiff may still challenge the legitimacy of the January Projections must be reduced to $305.8 million if damages need to be measured against the $9.99 implied merger consideration. And, if damages may only be predicated on the cash portion of the consideration because the reduction in Lumentum's stock price between the Merger's announcement and closing was not caused by the Proxy, the recoverable damages are reduced by 44% (as the $5.60 in cash was 56% of the total consideration as of the Merger announcement).

When accounting for the risk of Defendants' arguments regarding the correct figure to predicate damages on, the Settlement provides real money to shareholders versus the chance of a **$0** recovery under one of Plaintiff's damages theories, represents 5% of damages if Plaintiff were to win on all other issues but the Court determines that damages must be measured against the $9.99 per share merger announcement price, and represents 4.54%-13.84% of recoverable damages if damages may only be predicated on the cash portion of the merger consideration.

In sum, there is real risk that the Court or a jury could find that the Class did not suffer any damages, even if Plaintiff was able to overcome the challenges he faces in establishing liability.

---

[4] Calculated as $1.63 times the 179,899,000 Oclaro diluted shares outstanding.

### D. THE SETTLEMENT COMPARES FAVORABLY TO OTHER SECTION 14(a) MERGER SETTLEMENTS, AND THERE ARE NO RECENT SECTION 14(a) TRIALS TO LOOK TO FOR GUIDANCE

Notwithstanding the above referenced challenges, Plaintiff and Lead Counsel's perseverance and hard work in the face of substantial obstacles has yielded a proposed recovery for the Settlement Class that is not just in line with, but superior to, other § 14(a) "merger projection challenge" case settlements involving companies with larger market caps and much higher stock prices. Here, the Class will recover $0.09 per share for Oclaro shares that were valued at $8.36, compared to $0.14 per share for a $46 stock in *In re Envision Healthcare Corp.*, No. 18-1068-RGA (D. Del.) or $0.40 per share for a $111 stock in *NECA-IBEW Pension Trust Fund v. Precision Castparts Corp.*, No. 16-cv-01756-YY (D. Or. 2021). Based on the shareholder lists produced in discovery, the Class contains at least 33,578 members, for which the average recovery would be approximately $300 per claim after the requested attorneys' fees and expenses are subtracted and assuming no additional class members.

Lastly, few § 14(a) merger cases are litigated, and not a single case has gone to trial this century. Securities class actions in general – including far stronger cases – rarely proceed to trial. From the PSLRA's passage in 1995 to present, it is believed that only 16 securities class actions "have resulted in trial verdicts…A majority of cases are dismissed[.]"[5] The dearth of similar cases that have made it to trial and the high chance of a loss at trial make this action even riskier and more difficult to handicap.

It is without a doubt that Plaintiff and Lead Counsel were well aware of the strengths and weaknesses of this case when they agreed to settle, as the proposed Settlement was achieved after the completion of fact and expert discovery, consultation with damages and corporate governance experts, and a hard-fought mediation process overseen by an experienced mediator spanning more than two years. As a result of Plaintiff's and Lead Counsel's efforts over the past four years, the Settlement Class now stands to partake in a settlement that exceeds other similar settlements and the recent median settlement values in securities class actions.[6]

---

[5] ISS Insights, *Musk & Tesla Win Rare Securities Class Action Trial*, Feb. 14, 2023, https://insights.issgovernance.com/posts/musk-tesla-win-rare-securities-class-action-trial/ (last visited May 22, 2023).

[6] *See* Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class*

Given the challenges Plaintiff and the Class will face if this case proceeds, Plaintiff and Lead Counsel respectfully submit the Court should grant preliminary approval.

## II.    HISTORY OF THE LITIGATION

### A.    COMMENCEMENT OF THE ACTION

Plaintiff filed this Action on June 9, 2018, against Oclaro and its board of directors (the "Defendants") alleging violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") in connection with the acquisition of Oclaro by Lumentum via a materially false and misleading proxy statement ("Proxy"). Dkt. No. 1. The Merger closed on December 10, 2018. On April 15, 2019, Plaintiff filed the Amended Class Action Complaint (the "Amended Complaint") – the operative pleading in the Action. Dkt. No. 20.

The Action has been extensively litigated by Plaintiff and vigorously contested by Defendants. Plaintiff successfully defeated challenges to the Amended Complaint, including Defendants' Motion to Dismiss, which was granted in part and denied in part (Dkt. No. 43), as well as Oclaro's Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) (Dkt. No. 143). The parties engaged their respective experts, with Plaintiff retaining William Jeffers, CFA of The Griffing Group and Prof. Stephen J. Lubben, and Defendants engaging Prof. Steven Davidoff Solomon, Prof. Andrea Eisfeldt, and Prof. Wayne D. Hoyer. On August 16, 2022, Plaintiff filed a Motion for Class Certification (Dkt. No. 173), which was fully briefed and awaiting oral argument. A jury trial was proposed to be scheduled for May 9, 2023. Dkt. No. 145.

### B.    DISCOVERY UNDERTAKEN BY PLAINTIFF

Plaintiff conducted thorough fact and expert discovery. Specifically, Plaintiff served eleven subpoenas and propounded multiple written discovery requests, and ultimately obtained discovery from Defendants and third parties that included more than 400,000 pages of documents containing e-mails, board materials, financial data and projections, analyst reports, and other Merger related documentation.

---

*Action Litigation: 2022 Full-Year Review*, NERA Economic Consulting, at 13 (Jan. 23, 2023), https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_Trends.pdf. The report notes that the median settlement value was $8 million in 2021, and $13 million in 2022.

Plaintiff likewise responded to written discovery and produced documents to Defendants. The parties conducted eleven fact witness depositions, and each of the parties' experts were deposed. Plaintiff also obtained an affidavit from Ford Tamer, CEO of Inphi, a bidder in the sales process, as well as affidavits from Glass Lewis and ISS related to their processes in recommending mergers. Moreover, Plaintiff prepared and mailed surveys to approximately 2,000 potential class members to ascertain their views regarding pertinent issues.

### C.    ARM'S LENGTH SETTLEMENT NEGOTIATIONS AND MEDIATION

Fact and expert discovery were completed when Plaintiff and Lead Counsel agreed to the proposed Settlement. Thus, Plaintiff and Lead Counsel were well-positioned to evaluate the case, including the likelihood of proving falsity and loss causation, the potential recoverable damages, and the risks associated with other legal issues.

The parties first agreed to attend mediation before Michelle M. Yoshida of Phillips ADR Enterprises on August 3, 2021. Lead Counsel thoroughly prepared for mediation, provided a comprehensive written submission and advocated for Plaintiff and the Class during the initial settlement discussions. After a full day mediation, Lead Counsel opted to leave the session, and the parties were not able to reach a settlement. For well over a year following the first mediation, Plaintiff and Lead Counsel zealously litigated this case. On January 10, 2023, the parties attended a second mediation with Ms. Yoshida. The parties prepared further written statements, and after nearly fourteen hours of adversarial in-person negotiations the parties reached an agreement and executed a term sheet memorializing the key Settlement terms, including the $15,250,000 common fund. Plaintiff filed a Notice of Settlement on January 18, 2023. Dkt. No. 187.

### III.   COMPLIANCE WITH PROCEDURAL GUIDANCE AND SATISFACTION OF THE RULE 23(e)/*HANLON* FACTORS

This Court's Procedural Guidance Factors largely overlap with the factors for settlement approval set forth in Fed. R. Civ. P. 23(e)(2) and *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir.

1998).[7] The Court instructed Plaintiff to address the Procedural Guidance factors, in order, in the body of his brief. Dkt. No. 195. Plaintiff does so below.

### A.    PROCEDURAL GUIDANCE NO. 1: INFORMATION ABOUT THE SETTLEMENT

**1(a) Any differences between the settlement class and the class proposed in the operative complaint (or, if a class has been certified, the certified class)**

The Settlement Class is the same class contemplated by Plaintiff's Motion for Class Certification. Dkt. No. 173 at 1. As Plaintiff explained in his reply in support of class certification, Dkt. No. 181 at 14-15, the language Plaintiff used to define the class in his motion for class certification (Oclaro stockholders as of May 15, 2018 "who were harmed by Defendants' violations of § 14(a) and § 20(a) of the Securities Exchange Act of 1934 in connection with the merger") was just another way of articulating the same class definition that now appears in the Stipulation, *i.e.*, "all record and beneficial holders of common stock of Oclaro who held such stock during the period from and including May 15,

---

[7] Rule 23(e)(1)(B) requires the parties to show that the court will likely be able to approve the settlement under Rule 23(e)(2). Rule 23(e)(2) provides the following factors for courts to consider: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Similarly, *Hanlon* provides that courts should consider the following factors in assessing a settlement proposal: "the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." 150 F.3d at 1026. All of these factors are addressed herein, other than the reaction of the class, which is unknown until notices are sent.

The only *Hanlon* factors not addressed elsewhere are: (i) the presence of governmental participants; and (ii) other agreements made in connection with the Settlement. As to these factors, no governmental actors pursued claims similar or related to those asserted here, and Plaintiff and Lead Counsel relied exclusively on their own efforts to investigate and obtain the Settlement. Pursuant to and in accordance with ¶ 7.4 of the Stipulation, the parties have also entered into a Supplemental Agreement with a customary opt-out threshold "blow-up provision," which is not being publicly filed to avoid disclosing the specific threshold. *See Medina v. NYC Harlem Foods Inc.*, No. 21-CV-1321 (VSB), 2022 U.S. Dist. LEXIS 73263, at *19-20 (S.D.N.Y. Apr. 21, 2022) (noting such provisions are common).

REVISED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 3:18-cv-03435-JD

2018, the record date for voting on the Merger of Oclaro and Lumentum, through and including December 10, 2018, the date the Merger closed, including any and all of their respective predecessors, successors, trustees, executors, administrators, estates, legal representatives, heirs, assigns and transferees." Stipulation, p. 11, ¶ 1.29. In the Amended Complaint, the Class was defined as "the other former public stockholders of Oclaro[.]" Dkt. No. 20 at ¶ 26, which was too imprecise a definition for class certification. The Stipulation defines the Settlement Class and the Settlement Class Period with the requisite level of specificity, anchored by the appropriate dates to encompass Oclaro shareholders who held shares as of the record date for voting on the Merger and were alleged to be harmed by the Merger.

**1(b) Any differences between the claims to be released and the claims in the operative complaint (or, if a class has been certified, the claims certified for class treatment)**

The claims to be released correspond to the facts and events challenged in the Amended Complaint, which asserts that Defendants violated the Exchange Act by disseminating a materially false and misleading Proxy to Oclaro shareholders to solicit their approval of an unfair merger with Lumentum. The Stipulation at page 9, paragraph 1.26 defines "Released Claims" as:

> **any and all claims**, rights and causes of action, duties, obligations, demands, actions, debts, sums of money, suits, contracts, agreements, promises, damages and liabilities, whether known or unknown, contingent or non-contingent, derivative or direct, or suspected or unsuspected, including any claims arising under federal or state statutory or common law or any other law, rule or regulation, whether foreign or domestic, **that have been asserted, could have been asserted, or could be asserted in the future against Defendant Oclaro and the Individual Defendants, and any and all of their related parties**, including, without limitation, any and all of their current or former parents, subsidiaries, predecessors, successors, divisions, investment funds, joint ventures and general or limited partnerships, and each of their respective current or former officers, directors, trustees, partners, members, contractors, auditors, principals, agents, managing agents, employees, attorneys, accountants, investment bankers, underwriters, insurers in their capacity as such, as well as each of the Individual Defendants' immediate family members, heirs, executors, personal or legal representatives, estates, beneficiaries, predecessors, successors and assigns (collectively, "Defendants' Released Persons"), **that arise out of or relate in any way to: (i) the Action; (ii) the Merger; and (iii) the Preliminary and Definitive Proxy Statements issued by Oclaro in connection with the Merger (the "Proxy") or any other disclosures related to the Merger.**

Put more succinctly, the Settlement releases all claims that have been asserted, could have been asserted, or could be asserted in the future against Defendants and certain related entities or persons that arise out of or relate in any way to the Action, the Merger, and the Proxy or disclosures related to the Merger. The released claims are thus tied to the Merger and the Proxy, and the release is therefore appropriate for this case. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("[W]e have held that federal district courts properly released claims not alleged in the underlying complaint where those claims depended on the same set of facts as the claims that gave rise to the settlement."); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) ("A class settlement may also release factually related claims against parties not named as defendants[.]"); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 946-47 (N.D. Cal. 2013) (same).

### 1(c) Class recovery under the settlement, the potential class recovery if plaintiff had fully prevailed on each of his claims, and justification for the discount

Plaintiff addressed this factor in detail above, as it appeared to be the Court's primary concern during the April 20, 2023 hearing. To reiterate, the $15.25 million Settlement represents 7.75% of the maximum $196.7 million recovery based on the Corrected February Projections Damages Model, and 2.54% of the maximum $599.7 million recovery based on the December Projections Damages Model. However, if Defendants were to succeed in their argument that the Court's motion to dismiss order forecloses Plaintiff from relying on the significantly higher December Projections Damages Model, then only the $196.7 million figure is even in play. *Supra* § I.C.

Moreover, there are additional challenges that the Class would face in recovering damages if this case went forward. First, Plaintiff faces challenges in proving liability given that Defendants have provided a credible explanation for why Oclaro's projections were reduced. *Supra* § I.A. Second, if the Court were to adopt the loss causation analysis set forth in opinions like *Resolute Energy* and cases cited therein, Plaintiff could not prove loss causation as a matter of law. *Supra* § I.B. Third, if Defendants successfully excluded the report and testimony of Plaintiff's damages expert, the Class would be unable to prove damages. *Supra* § I.C. Fourth, if Defendants are correct that any damages must be predicated on the $9.99 implied value of the merger consideration at the time the merger was announced, then the

Class would be unable to prove any damages under Plaintiff's Corrected February Projections Damages Model, and the maximum recovery is reduced to $305.8 million if Plaintiff is able to proceed on his December Projections Damages Model – which Defendants contend is foreclosed by the Court's motion to dismiss order. *Id.* Lastly, the maximum recoverable damages are reduced by 44% if damages may only be predicated on the cash portion of the merger consideration because the Lumentum stock portion of the consideration decreased between the Merger's announcement and closing for reasons unrelated to the Proxy. *Id.*

In sum, the $15.25 million common fund represents a good recovery in light of the challenges the Class will face if this case proceeds. Indeed, the Settlement amount compares favorably to other recent Section 14(a) settlements, even though such cases involved companies with much higher market caps and share prices. *See* Appendix A (chart of comparable settlements). At bottom, the recovery of approximately 14% of the most likely damages that could be recovered if Plaintiff could establish liability and multiple other challenges played out in Plaintiff's favor is fair to the Class.

### 1(d) Any other cases that will be affected by the settlement.

Neither Lead Counsel nor Defendants' Counsel are aware of any other cases that will be affected by this Settlement.

### 1(e) The proposed allocation plan for the settlement fund.

Under the Plan of Allocation, the Settlement Class Members who were recordholders of Oclaro common stock on May 15, 2018, and were thus entitled to vote on the Merger, and held Oclaro shares through the close of the Merger on December 10, 2018, who submit a valid Proof of Claim to the Claims Administrator, may share in the recovery, pro rata with their stock holdings. Stipulation Ex. A-1 (Notice) at 6, 11. This is a similar Plan of Allocation used in other § 14(a) merger settlements.

### 1(f) An estimate of the expected claim rate in light of the experience of the selected claims administrator and/or counsel based on comparable settlements, the identity of the examples used for the estimate, and the reason for their selection.

Lead Counsel expects the claims rate to reach 75% of eligible Oclaro shares based on their experience in comparable settlements. The most directly comparable settlement that Lead Counsel has

obtained is a $17.4 million settlement in *In re Envision Healthcare Corp.*, No. 18-1068-RGA (D. Del.), which resolved § 14(a) claims arising from a merger proxy and was approved in February 2021. There, claims were filed for 105,477,839 shares, out of approximately 120 million eligible shares, representing an 88% claims rate. The notice program and settlement administration process utilized in *Envision* were substantially identical to those contemplated by the Settlement here, and Lead Counsel thus anticipates a similar claims rate. A similarly high claims rate is also likely because, like *Envision*, most of Oclaro's 30 largest recordholders (which collectively held 57% of Oclaro's shares) were institutional holders or brokers which owe fiduciary duties to their clients, increasing the likelihood they will submit claims.

Lead Counsel obtained another comparable settlement in *Plant v. Jaguar Animal Health, Inc.*, No. 17-cv-04102-RS (N.D. Cal.). That settlement also resolved Section 14(a) claims arising from a merger proxy, for $2.6 million, and was approved by Chief Judge Seeborg in May 2021. Claims were filed for 5,559,852 shares, out of approximately 11.6 million eligible shares, representing a 48% claims rate. However, Jaguar had a much smaller institutional shareholder base than Oclaro or Envision. The notice program and settlement administration process utilized in Jaguar were also substantially identical to those contemplated by the Settlement here.

Upon the Court's suggestion, Lead Counsel reviewed the information regarding the claims process and estimated claims rate provided by lead counsel in *Purple Mt. Tr. v. Wells Fargo & Co.*, No. 18-cv-03948-JD (N.D. Cal.) ("*Purple Mountain*"). There, lead counsel provided a single comparable outcome example with a 36% valid claims rate and noted that "the number of claims varies widely from case to case as does the size of each claim[,]" but, based on its experience it anticipated "that the vast majority of damaged shares" would submit claims. *Wells Fargo* Dkt. No. 220, Appendix at p. 2-3, 6. Based on their own experience, Lead Counsel here anticipates the same. And "courts have approved settlements with significantly lower claims rates" than Lead Counsel expects here. *Shuman v. SquareTrade Inc.*, No. 20-cv-02725-JCS, 2023 U.S. Dist. LEXIS 34302, at *9 (N.D. Cal. Mar. 1, 2023) (citing cases where claims rates ranged from 2%-6%); *In re Tracfone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1006 (N.D. Cal. 2015) (deeming estimated claims rate of 25-30% an "excellent result"); *In re Facebook Biometric Info. Privacy Litig.*, 522 F. Supp. 3d 617, 622 (N.D. Cal. 2021) (granting final

approval where settlement claims rate was approximately 22%).

With respect to the substance of the claim form, pursuant to the Court's guidance, Dkt. No. 195, the parties have removed the release and certain other paragraphs they deemed unnecessary, although such paragraphs are customary and were also included in the *Purple Mountain* claim form, for example. As a result, the claim form was **reduced from 6 pages to 4 pages,** Monteverde Decl., Ex. 2, which is shorter than the 11-page claim form this Court recently approved in *Purple Mountain*. *Purple Mountain* Dkt. No. 230, Exhibit A-2. The claim form now consists of a section with general instructions, a section requiring the claimant to provide basic information about themselves and the number of shares of Oclaro stock they held, and a section of "acknowledgements" which do not require any action on the claimant's part and are meant to ensure that the claimant is actually a Settlement Class member. *See* Monteverde Decl., Ex. 2. The language is straightforward, similar to the language routinely used in securities class action claim forms, and appropriate for a class of shareholders.

The Court also expressed concern that the claim form requests that claimants submit documentary proof of their Oclaro stock ownership. Dkt. No. 195. However, requesting documentation is important to ensure that individuals or entities that are not actually Class members but who may nevertheless submit a claim are not paid. Requests for documentary proof of class membership are routine in securities class action settlements for this reason. *E.g., Purple Mountain* Dkt. No. 230, Exhibit A-2, at C.4 (requiring submission of "genuine and sufficient documentation for all of your transactions"). Moreover, while Oclaro or its successor entity have records of record holders, documentary proof of ownership is useful because many "class members are likely beneficial purchasers whose securities were purchased by brokerage firms, banks, institutions, and other third-party nominees in the name of the nominee, on behalf of the beneficial purchaser." *Vataj v. Johnson*, No. 19-cv-06996-HSG, 2021 U.S. Dist. LEXIS 75879, at *31 (N.D. Cal. Apr. 20, 2021). The documentation request is thus important to ensure that only valid claims made by actual class members are paid, and to avoid oversubscription. However, the requested documentation here is easy to provide and can include any document showing ownership of Oclaro shares, including: screen shots from a brokerage account; trade confirmations; or monthly brokerage statements which are usually readily available online.

**1(g) Whether and under what circumstances money originally designated for class recovery will revert to any defendant**

This is a non-reversionary settlement in which the entire Settlement Fund will be paid out and none will revert to any Defendant. Stipulation, ¶5.7.

**B.    PROCEDURAL GUIDANCE NO. 2: SETTLEMENT ADMINISTRATION**

**2(a) Proposed settlement administrator information/methods of notice and claims payment proposed /lead counsel's history of engagements with the administrator**

Lead Counsel has chosen RG/2 Claims Administration LLC ("RG/2") as the proposed Claims Administrator after receiving higher bids from two other settlement administrators. Specifically, bids from Rust Consulting and Gilardi & Co. LLC were $283,234.00 and $346,000.00, respectively.

The Notice packet will be sent via first class mail, as well as via email where an email address is available. The Notice will also be disseminated via newswire and posted on a dedicated settlement website. Claims will be paid via check.

In the past two years, RG/2 has served as claims administrator for Lead Counsel in the following class action settlements: *Baker v. McAdams et al.*, No. 21STCV07569 (Los Angeles Super. Ct.) ($3 million settlement in 2023); *Brown v. Papa Murphy's Holdings, Inc.*, No. 19-cv-05514-BHS-JRC (W.D. Wash.) ($2.4 million settlement in 2022); and *Plant v. Jaguar Animal Health, Inc.*, No. 3:17-cv-04102-RS (N.D. Cal.) ($2.6 million settlement in 2021).

**2(b) Settlement administrator's procedures for securely handling class member data/insurance/anticipated administrative costs**

A full description of RG/2's data security procedures is provided in the accompanying Declaration of William W. Wickersham (Ex. 5 to Monteverde Decl.), which addresses RG/2's procedures for securing class member data and its maintenance of insurance for errors.

With respect to the costs of settlement administration, RG/2's original proposal estimated administrative costs of $247,445 based on 100,000 notices mailed, which was lower than the two other bids received. However, RG/2 has provided an additional estimate of $191,052, based on sending 35,000 notices (predicated on the number of Class members that can presently be identified from shareholder

lists obtained in discovery or produced by Oclaro). The final cost will depend on the number of notices actually mailed. Moreover, the total estimated cost includes the costs of facilitating the mailing, maintaining the settlement website, processing, reviewing and remediating class member claims, responding to nominees and claimant questions by email and by phone, effectuating the distribution upon final approval as well as engaging in outreach to prospective class members.

RG/2's estimated costs are reasonable in light of Lead Counsel's experience in similar settlements. Such costs are also consistent with the claims administration fees charged in similar cases. *See* Appendix A. The notice and administration costs will be paid out of the Settlement Amount.

### C.    PROCEDURAL GUIDANCE NO. 3: THE PROPOSED NOTICE TO THE CLASS IS ADEQUATE

The Notice includes all of the required information identified in the Procedural Guidance and incorporates the suggested language for class notices. Stipulation, Ex. A-1.

Moreover, the notice distribution plan is substantively identical to the plans utilized in numerous other securities class action settlements and will effectively disseminate notice to Settlement Class Members. Specifically, the notice plan calls for direct mail (and email where an email address is available) to all Oclaro stockholders who are likely to be Settlement Class Members. Such stockholders whose mailing or email addresses are ascertainable from Oclaro's records will be sent Notices. Moreover, Nominees who held Oclaro common stock at any point in time from May 15, 2018, through December 10, 2018, as nominee for a beneficial owner, will be sent the Notice and instructed to either mail a copy of the Notice to such persons, or to provide a list of the names and addresses of such persons to the Claims Administrator. Nominees will be further informed that, regardless of whether they choose to complete the mailing themselves or elect to have the mailing performed for them by the Claims Administrator, they may obtain reimbursement for or advancement of reasonable administrative costs actually incurred or expected to be incurred in connection with forwarding the Notice, upon submission of appropriate documentation to the Claims Administrator. Stipulation, Exhibit A-1, at 12.

The Notice will also be disseminated over a national newswire service, PR Newswire, and will be posted on the settlement website that will be established to provide Settlement Class Members with important Settlement information and documents.

### D.    PROCEDURAL GUIDANCE NOS. 4 AND 5: OPT-OUTS AND OBJECTIONS

The proposed Notice instructs class members who wish to exclude themselves from the Settlement how to do so, in accordance with the Court's Procedural Guidance. Stipulation, Ex. A-1, at 8. It also advises Class members of the opt-out deadline and the consequences of opting out. *Id*. at 8-9. The proposed Notice also incorporates the suggested language and information regarding objections from the Procedural Guidance. *Id*. at 9-10.

### E.    PROCEDURAL GUIDANCE NO. 6: ATTORNEYS' FEES AND EXPENSES

As set forth in the Notice, Lead Counsel intends to move for attorneys' fees of no more than one-third of the Settlement Fund, plus expenses not to exceed $400,000, which includes Lead Counsel's expert fees of $289,011.01. Moreover, the expense request will not include travel/lodging related to attendance at hearings or depositions.

A one-third fee of the $15,250,000 Settlement Amount would equate to $5,083,333.33. While Lead Counsel notes that additional time will be spent in connection with final approval and settlement administration, Lead Counsel's lodestar as of March 17, 2023 exceeds the fee request and is $5,317,885.00, Monteverde Decl., Ex. 4, and thus a one-third fee of the Settlement Amount is less than the value of the time that Lead Counsel has expended in this case to date.

Moreover, a fee request of one-third of the Settlement Amount is in line with fees routinely granted in complex class actions such as this one. *See, e.g. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (affirming award of one-third of the total recovery); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (33% award "for attorneys' fees is justified because of the complexity of the issues and the risks"); *Romero v. Producers Dairy Foods, Inc.*, No. 1:05cv0484 DLB, 2007 U.S. Dist. LEXIS 86270, at *4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33% of the common fund, and stating "'[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery'")

1   (citing 4 Newberg and Conte, *Newberg on Class Actions* § 14.6 (4th ed. 2007)). Indeed, fee awards in

2   securities class actions often exceed 25% because such cases are especially expensive and risky, *see,*

3   *e.g., Stanger v. China Electric Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016), and "whether the case

4   was risky for class counsel" is a pertinent factor. *Facebook*, 522 F. Supp. 3d at 631 (Donato, J.).

5        Additionally, a review of fee awards in cases involving "common funds of comparable size[,]"

6   *id.* at 632, suggests the market rate fee award in such cases is approximately 33%. *See Davis v. Yelp,*

7   *Inc.*, No. 18-cv-00400-EMC, 2023 U.S. Dist. LEXIS 40323, at *6 (N.D. Cal. Jan. 27, 2023) (awarding

8   33% of $22.25 million common fund in securities case and collecting cases awarding same percentage

9   of similarly sized common funds); Appendix A (summarizing recent comparable Section 14 class

10  settlements). As Lead Counsel will further demonstrate in their motion for an award of attorneys' fees,

11  an award of one-third of the Settlement Amount is warranted after "consider[ing] all the circumstances

12  of the case[.]" *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

13      F.    **PROCEDURAL GUIDANCE NO. 7: SERVICE AWARD TO PLAINTIFF**

14       Plaintiff intends to seek a service award relating to his representation of the Settlement Class in

15  an amount up to $5,000 pursuant to 15 U.S.C. § 78u-4(a)(4), as reimbursement for his time and expenses

16  in representing the Settlement Class. Plaintiff performed his duties by responding to discovery, including

17  collecting documents, answering interrogatories and requests for admission, sitting for a four-hour

18  deposition, and communicating with Lead Counsel regarding developments in the litigation. Dkt. No.

19  173 at 5 and citations within. Lead Counsel believes a service award of this amount is fully supported

20  by Plaintiff's efforts throughout the Litigation. Such an award also would "not constitute inequitable

21  treatment of class members" relative to Plaintiff. *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-

22  04883-BLF, 2019 U.S. Dist. LEXIS 121886, at *26 (N.D. Cal. July 22, 2019); *Bellinghausen v. Tractor*

23  *Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (collecting cases and noting that while such an award

24  is discretionary, "[i]n this district, a $5,000 payment is presumptively reasonable" and "service awards

25  "typically range from $2,000 to $10,000"); *see also Todd v. STAAR Surgical Co.*, No. CV 14-5263

26  MWF (GJSx), 2017 U.S. Dist. LEXIS 176183, at *15-16 (C.D. Cal. Oct. 24, 2017) (collecting

27  "numerous cases in which service awards of $10,000 or more are found reasonable").

28

### G.    PROCEDURAL GUIDANCE NO. 8: CY PRES AWARDEES

The Settlement provides for reallocating any balance remaining in the Net Settlement Fund after the initial distribution on a pro rata basis among Authorized Claimants until the balance remaining in the Net Settlement Fund is *de minimis*, with any *de minimis* remainder being issued as a cy pres award to the ACLU Foundation of Northern California. Stipulation, at p. 23, ¶ 5.7

### H.    PROCEDURAL GUIDANCE NO. 9: TIMELINE

The proposed Preliminary Approval Order includes the following schedule:

| | |
|---|---|
| Notice emailed/mailed to the Settlement Class | 14 calendar days after entry of the Preliminary Approval Order |
| Summary Notice published | 3 calendar days after entry of the Preliminary Approval Order |
| Deadline for filing brief in support of Lead Counsel's request for an award of attorneys' fees and expenses and any service award to Plaintiff | 77 calendar days prior to the Final Approval Hearing |
| Last day for submitting Proof of Claim and Release forms | 42 calendar days prior to the Final Approval Hearing or such other time as set by the Court |
| Deadline for requesting exclusion from the Settlement Class and objecting to the Settlement, Plan of Allocation, or request for an award of attorneys' fees and expenses | 42 calendar days prior to the Final Approval Hearing |
| Deadline for filing brief in support of the Settlement, certification of the Settlement Class and Plan of Allocation | 35 calendar days prior to the Final Approval Hearing |
| File declaration confirming mailing and publishing Notice and Summary Notice | 7 calendar days prior to the Final Approval Hearing |
| Reply papers in support of the Settlement, Plan of Allocation, or request for an award of attorneys' fees and expenses | 7 calendar days prior to the Final Approval Hearing |
| Final approval hearing | At the Court's convenience, but no less than 120 calendar days after entry of the Preliminary Approval Order |

*See* Preliminary Approval Order (Exhibit A to the Stipulation) at 4-5, 7.

I.    **PROCEDURAL GUIDANCE 10: CLASS ACTION FAIRNESS ACT AND SIMILAR REQUIREMENTS**

Defendants have given the notice regarding the Settlement required by the Class Action Fairness Act, 28 U.S.C. § 1715(b). Dkt. No. 193. No other notices to government entities are required.

J.    **PROCEDURAL GUIDANCE 11: COMPARABLE OUTCOMES**

The required information about comparable cases is summarized in the chart attached as Appendix A hereto.

## IV.    ARGUMENT

A.    **THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED**

Preliminary approval of a class settlement is warranted if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. *In re Facebook Biometric Info. Privacy Litig.*, No. 15-CV-03747-JD, 2020 U.S. Dist. LEXIS 151269, *9 (N.D. Cal. Aug. 19, 2020) (Donato, J.). The proposed Settlement readily satisfies this inquiry.

1.    **The Settlement is the Result of Arm's Length Negotiations by Informed and Experienced Counsel**

Courts "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). The Settlement at issue here is the product of serious, informed, non-collusive negotiations between the parties after extensive litigation and two mediations before an experienced mediator. Ms. Yoshida has been a mediator for more than 15 years, serving as mediator for cases regarding complex business litigation including securities and derivative actions. Philips ADR, Michelle Yoshida, Esq., http://www.phillipsadr.com/bios/michelle-yoshida/ (last visited May 16, 2023). The participation of an independent mediator is a factor that weighs in favor of a finding of non-collusiveness in settlement negotiations. Moreover, through the mediation process, the strengths and weaknesses of the parties' claims and defenses were extensively debated.

The Settlement that followed the parties' second Mediation did not occur until January 2023,

after the completion of fact and expert discovery. At the time of the second mediation, Lead Counsel had devoted thousands of hours to prosecuting the litigation, engaged in substantial motion practice and an adversarial discovery process, and was in the process of developing Plaintiff's claims for trial. As a result, Plaintiff and Lead Counsel were well-positioned to evaluate the strengths and weaknesses of the claims and defenses, as well as the fairness of the Settlement.

Moreover, Lead Counsel is well qualified to assess the Settlement's fairness when weighed against the risks of further litigation. For more than four years, Lead Counsel has zealously represented the interests of the Settlement Class. Lead Counsel also has significant expertise in securities litigation, *see* Monteverde Decl. Ex. 3 (firm resume), and is recognized as a preeminent securities firm, listed in the Top 50 in the 2018-2022 ISS Securities Class Action Services Report in recognition of the substantial settlements achieved by the firm on behalf of shareholders. *See* Monteverde & Associates, PC, https://monteverdelaw.com/news (providing the ISS reports for each year).

Furthermore, Lead Counsel conducted extensive discovery during an adversarial discovery process and, through documentary and deposition evidence, gained valuable insight regarding Plaintiff's claims. However, Lead Counsel also came to ascertain real challenges in proving liability and damages at trial – particularly in light of evidence uncovered during discovery explaining what purportedly drove the reductions to Oclaro's projections. Nevertheless, through their zealous representation and perseverance, Plaintiff and Lead Counsel were able to secure a settlement which eliminates the substantial risk that the Class would recover nothing if the case continued.

Simply put, the Settlement is fair, reasonable and adequate. It is predicated on Plaintiff's and Lead Counsel's knowledge of the strengths and weaknesses of the Class's claims, based on the evidence adduced through fact and expert discovery, as well as Lead Counsel's analysis of Defendants' legal and factual arguments, and the potential risk that the Court or a jury may have ruled in favor of Defendants – resulting in no recovery for the Settlement Class. *See In re OmniVision Techs., Inc*., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (holding that the "recommendation of counsel" that was familiar with the dispute and had expertise in securities litigation weighed in favor of approving the settlement).

1

2.     **The Settlement Has No Obvious Deficiencies and Does Not Improperly Grant Preferential Treatment to Plaintiff or Segments of the Class**

2

3

The Settlement has no obvious deficiencies and does not grant improper or preferential treatment to Plaintiff or other segments of the Settlement Class. As detailed above, the $15.25 million Settlement is fair given the significant risks of further litigation.

4

5

Under the Plan of Allocation, each Authorized Claimant that submits a valid, timely Proof of Claim will receive distribution from the Net Settlement Fund on a pro rata basis. Stipulation at pp. 22-23, Notice at 12. Therefore, assuming 100% of the shares in the Settlement Class submit a valid and timely Proof of Claim, the average distribution will be $0.09 per share owned (before the payment of Court-approved fees and expenses (estimated to be approximately $0.03 per share) and the cost of notice and claims administration). Notice at 6. This means that every shareholder in the Settlement Class will receive equal treatment under the Plan of Allocation. Moreover, if the Court grants Plaintiff a service award, that would "not constitute inequitable treatment of class members" relative to Plaintiff. *Extreme Networks,* 2019 U.S. Dist. LEXIS 121886, at *26 (citing *Rodriguez*, 563 F.3d at 958-59).

6

7

8

9

10

11

12

13

14

3.     **The Settlement Falls Within the Range of Possible Approval Because it Provides Fair Relief to the Settlement Class and Compares Favorably to Settlements in Similar Cases**

15

16

As explained in detail above, this Settlement warrants preliminary approval because it is an excellent result given the numerous risks of further litigation – particularly given the specific hurdles of proving economic loss in light of Defendants' challenges to Plaintiff's damages expert's calculations and methodology and the challenge of refuting Defendants' primary justification for cutting Oclaro's projections, *i.e.*, that they decided to exit Oclaro's OCB business after the December Projections were prepared.

17

18

19

20

21

22

The Settlement Amount of $15.25 million is in line with other Section 14(a) settlements, which raise unique challenges that do not exist in more traditional securities fraud actions under Section 10(b)/Rule 10b-5. The recovery of approximately 14% of the most likely damages that could be recovered – **if** Plaintiff could establish liability and multiple other challenges played out in Plaintiff's favor – is fair to the Class. *See, e.g., Vataj*, 2021 U.S. Dist. LEXIS 75879, at *26 (preliminarily approving

23

24

25

26

27

28

settlement that was 2% of estimated damages, noting "this percentage is consistent with the typical recovery in securities class action settlements.") (citing Laarni T. Bulan et al, *Securities Class Action Settlements: 2019 Review and Analysis* (Cornerstone Research)); *see also* Janeen McIntosh, Svetlana Starykh & Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, at 18, Figure 19 (NERA Jan. 24, 2023) (median ratio of settlement to investor losses was 1.8% in 2022), https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_Trends.pdf; L.T. Bulan, L.E. Simmons, *Securities Class Action Settlements, 2022 Review and Analysis*, Cornerstone Research (2023), at 6 (stating that the median comparable securities class action settlements in 2022 resulted in a recovery of 4.3% or 4.4% of estimated damages), https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf.

More importantly, the Class will recover $0.09 per share for its $8.36 Oclaro shares, compared to $0.14 per share for a $46 stock in *Envision* or $0.40 per share for a $111 stock in *Harman*. *See* Appendix A. The fact that this Settlement compares favorably to the most analogous Section 14 settlements is a testament to Plaintiff's and Lead Counsel's hard work in pushing the case forward despite various challenges. Preliminary approval is warranted.

### B. CONDITIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS APPROPRIATE

The Court should also conditionally certify the Settlement Class for purposes of effectuating the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

There are no substantive differences between the Settlement Class as defined in the Stipulation and the class proposed in Plaintiff's Motion for Class Certification, as both were defined to capture Oclaro shareholders who were harmed by Defendants' alleged wrongdoing in conjunction with the Proxy and resulting Merger. As demonstrated below, the proposed Settlement Class satisfies the requirements of Rule 23(a) and Rule 23(b)(3).

### 1. The Settlement Class Satisfies the Requirements of Rule 23(a)

Class certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class

("commonality"); (3) the claims/defenses of the class representative are typical of the claims/defenses of the class ("typicality"); and (4) the class representative will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a) As discussed below, the proposed Settlement Class meets each of these requirements.

### a.    Numerosity

Oclaro's records produced in discovery indicate there were 1,620 recordholders and 32,023 non-objecting beneficial owners, and there were 170,656,376 shares of Oclaro common stock issued and outstanding as of the record date. Dkt. No. 29-3 at 7. The numerosity requirement is plainly satisfied here, as Plaintiff estimates that there are in excess of 167 million shares of Oclaro common stock in the Settlement Class that are held by thousands of shareholders across the United States. *See In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).

### b.    Commonality

Rule 23's commonality requirement "only requires a single significant question of law or fact." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012), overruled in part on other grounds by *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F. 4th 651, 682 n.32 (9th Cir. 2022). Here, the significant common questions of law or fact include whether Defendants violated Sections 14(a) and 20(a) of the Exchange Act by preparing and disseminating a materially false and misleading Proxy, and whether Plaintiff and the Settlement Class were damaged as a result. *In re Hot Topic, Inc. Sec. Litig.*, No. CV 13-02939 SJO (JCx), 2014 U.S. Dist. LEXIS 155544, *12 (C.D. Cal. Nov. 3, 2014) (certifying class in Section 14(a) action). Accordingly, commonality is satisfied.

### c.    Typicality

A class representative's claims are "typical" if they are reasonably co-extensive with those of the other class members. The claims need not be substantially identical. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997); *Hanlon*, 150 F.3d at 1020. Plaintiff and the other Settlement Class Members all held Oclaro common stock during the Settlement Class Period, and their claims arise from the same allegedly misleading Proxy and resulting Merger. Thus, typicality is satisfied.

1

           **d.**        **Adequacy**

2

        Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

3

interests of the class." Legal adequacy in the Ninth Circuit is determined using the following two

4

questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class

5

members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf

6

of the class?" *Hanlon*, 150 F.3d at 1020.

7

        Here, Plaintiff and Lead Counsel have no conflicts of interest with each other or any of the other

8

Settlement Class Members. Their commitment to obtaining the best possible result for the Settlement

9

Class is evinced by the adversarial history of this litigation, discussed above. Furthermore, Lead Counsel

10

has invested considerable time and resources in prosecuting this Action, which enabled them to negotiate

11

an outstanding Settlement for the Settlement Class. Plaintiff has also faithfully represented the

12

Settlement Class. He engaged experienced attorneys to vigorously litigate the case, and has

13

demonstrated both that he has a sufficient understanding of the Action and that his interests align with

14

the proposed Settlement Class. Dkt. No. 173 at 5 and citations within; Dkt. No. 181 at 1-5. In sum, the

15

adequacy requirement is satisfied, and the Settlement Class meets all four requirements for class

16

certification under Rule 23(a).

17

           **2.**      **The Settlement Class Meets the Requirements of Rule 23(b)(3)**

18

        Certification under Rule 23(b)(3) requires "that the questions of law or fact common to class

19

members predominate over any questions affecting only individual members, and that a class action is

20

superior to other available methods for fairly and efficiently adjudicating the controversy." The court

21

may consider that the class will be certified for settlement purposes only, and thus a showing of

22

manageability at trial is not required. *See Amchem*, 521 U.S. at 618.

23

           **a.**        **Common Legal and Factual Questions Predominate**

24

        Here, questions common to all Settlement Class Members substantially predominate over any

25

individualized questions. Such common issues are: (1) whether the Proxy contained materially false or

26

misleading statements; and (2) whether the alleged material misrepresentations and omissions caused

27

recoverable losses. *See In re Hot Topic, Inc. Sec. Litig.,* 2014 U.S. Dist. LEXIS 155544, at *17. The

28

same alleged course of conduct by Defendants forms the basis of all Settlement Class Members' claims. As set forth above, "the common, aggregation-enabling issues in the case are *more prevalent or important* than" any non-common, individual issues. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). Therefore, the predominance requirement of Rule 23(b)(3) is met.

**b.    A Class Action is Superior to Other Methods of Adjudication**

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). In securities cases predicated on false or misleading statements that were disseminated to numerous shareholders, class actions are superior to other methods of adjudication because they promote judicial economy. *See Desai v. Deutsche Bank Sec. Ltd,* 573 F.3d 931, 937 (9th Cir. 2009); *In re Seagate Tech. II Sec. Litig.*, 843 F. Supp. 1341, 1351-52 (N.D. Cal. 1994).

In this case, the Stipulation provides Settlement Class Members with the ability to obtain prompt and certain relief through well-defined administrative procedures assuring due process. This includes the right of any Settlement Class Member dissatisfied with the Settlement to object to it, or to exclude themselves from the Settlement Class. The Settlement also relieves the substantial judicial burdens that would result from repeated adjudication of the same issues in hundreds to thousands of individualized trials against Defendants, by affording settlement relief to the Settlement Class through certification as a class action. Since the parties seek to resolve this Action through a settlement, any manageability issues that could have arisen at trial are irrelevant. *See Amchem*, 521 U.S. at 620. Finally, the complexity of the claims asserted against Defendants and the high cost of individualized litigation make it unlikely that the vast majority of Settlement Class Members would be able to obtain relief without class certification. For all the reasons mentioned, a class action is a superior method of adjudication for this litigation.

In sum, the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, and preliminary certification of the proposed Settlement Class is appropriate.

### C.    THE NOTICE PROGRAM SATISFIES ALL REQUIREMENTS AND IS DESIGNED TO REACH AS MANY CLASS MEMBERS AS POSSIBLE

Rule 23(e)(1) of the Federal Rules of Civil Procedure requires that all members of the class be notified of the terms of any proposed settlement. The notice must state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members. Fed. R. Civ. P. 23(c)(2)(B). Furthermore, in securities class actions, the PSLRA requires that the notice provide the following information:

> (1) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis;" (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, a statement from each settling party concerning the issue or issues on which the parties disagree;" (3) "a statement indicating which parties or counsel intend to make . . . an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought;" (4) "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members;" and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement."

15 U.S.C. § 78u-4(a)(7).

Here, the proposed form of the Notice (Stipulation Exhibit A-1) meets these requirements. The Notice describes the Settlement and sets forth the Settlement Amount in the aggregate and on an average per share basis. *Id*. at 5, 11-12. The Notice describes the Settling Parties' disagreement over damages and liability. *Id*. at 3-5. The Notice sets out the limits on attorneys' fees and expenses Lead Counsel intends to seek from the Settlement Fund, and describes the proposed Plan of Allocation. *Id*. at 2-5, 11-12. The Settling Parties agreed on the form of the Notice to be disseminated to all persons who fall

within the definition of the Settlement Class and whose names and addresses have been or can be identified from or through Oclaro's records. The Notice also summarizes the nature, history, and status of the Action, sets forth the definition of the Settlement Class, states the Settlement Class's claims and issues, discusses the rights of persons who fall within the definition of the Settlement Class (including the right to be excluded or object to Settlement and all relief requested in connection thereto), and summarizes the reasons the Settling Parties are proposing the Settlement. The Notice also contains instructions on how to access the case docket via PACER or in person at the Court. *Id*. at 11.

Further, the Notice includes detailed information on the process and requirements for requesting exclusion from the Settlement Class. *Id*. at 8-9. It also informs the Settlement Class of what will happen if they do nothing. *Id*. at 11. The Notice provides instructions on the timing and process for completing and submitting the Proof of Claim form. *Id*. at 6-7. The Notice also informs Settlement Class Members that copies of the Notice and Proof of Claim form may be obtained by writing the Claims Administrator, or by accessing the documents on the Settlement website.

The Notice concisely explains the Settlement Class Members' opt-out rights, including the timing and method to opt-out. *Id*. at 2, 8. For those Settlement Class Members who do not wish to opt-out, the Notice provides that they can object to the Settlement or the request for fees and expenses. *Id*. at 9-10. The Notice also explains the difference between objecting to the Settlement and opting out of the Settlement. *Id*. at 2, 10.

The Notice will set forth the date, time, and place of the Final Approval Hearing, clearly states that the date may change without further notice, and explains how and where Settlement Class Members may confirm beforehand to ensure that the date and/or time has not changed. *Id*. at 10. It also sets forth the procedures for commenting on the Settlement, and includes addresses for the Court and Lead Counsel. *Id*. at 9-10. The Claims Administrator will cause a copy of the Notice and Proof of Claim and Release to be emailed to Settlement Class Members for whom an email address exists in Oclaro's shareholder lists, and mailed by First-Class Mail to all Settlement Class Members who can be identified with reasonable effort, and will post the Notice and Proof of Claim and Release on a settlement-related website. The Claims Administrator will also send the Notice to entities which commonly hold securities

in "street name" as nominees for the benefit of their customers who are the beneficial purchasers. *Id.* at 12. Plaintiff further proposes to distribute electronically a Summary Notice through PRNewswire. The Notice and Summary Notice are attached to the Stipulation as Exhibits A-1 and A-3. Lead Counsel believes that the proposed notice plan is the best plan available and will reach all the investors (and/or their brokers) that are potential members of the Settlement Class.

These proposed methods of giving notice – direct mailing and e-mail where an e-mail address is available, plus dissemination via a business-oriented wire service and maintenance of a settlement website – have been "found to be satisfactory and meet due process." *In re Celera Corp. Sec. Litig.*, No. 5:10-CV-02604-EJD, 2015 U.S. Dist. LEXIS 42228, at *18-20 (N.D. Cal. Mar. 31, 2015). As such, the contents of the Notice and Summary Notice and methods of providing notice satisfy the requirements of Rule 23(e), the PSLRA and this Court's Procedural Guidance for Class Action Settlements. Accordingly, the Court should approve the proposed Notice and Summary Notice.

## V.    CONCLUSION

For the foregoing reasons, the proposed Settlement warrants this Court's preliminary approval. Plaintiff respectfully requests that the Court enter the Preliminary Approval Order.

Dated: May 22, 2023                    Respectfully submitted,

/s/ *Juan E. Monteverde*
Juan E. Monteverde (NY Reg. No. 4467882)
**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde (admitted *pro hac vice*)
Miles D. Schreiner (admitted *pro hac vice*)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com
            mschreiner@monteverdelaw.com

David E. Bower SBN 119546
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230

Tel: (310) 446-6652
Email:  dbower@monteverdelaw.com

*Counsel for Lead Plaintiff and*
*Lead Counsel for the Putative Class*

REVISED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 3:18-cv-03435-JD

# APPENDIX A

| Case Name | *In re Envision Healthcare Corp.*, 18-cv-01068-RGA-SRF (D. Del. 2021) | *Hurwitz v. LRR Energy L.P.*, 15-711 (D. Del. 2018) | *Plant v. Jaguar Animal Health, Inc.*, 17-cv-4102-RS (N.D. Cal. 2021) | *Baum v. Harman Int'l*, 17-cv-00246-RNC (D. Ct. 2022) | *NECA-IBEW Pension Trust Fund v. Precision Castparts Corp*, 16-cv-01756-YY (D. Or. 2021) | *Karri v. Oclaro, Inc.*, 18-cv-3435-JD (N.D. Cal. 2023) |
|---|---|---|---|---|---|---|
| **Common Fund Amount** | $17.4m | $8m | $2.6m | $28m | $21m | $15.25m |
| **Number of Shares Held by Class** | 120m | 10.4m | 11.6m | 69m | 133m | 167.5m |
| **Market Cap / Price Per Share** | $9.9b / $46 p/s | $539m / $8.93 p/s | $18m / $1 p/s | $5.5b / $111.50 p/s | $37b / $235 p/s | $1.8b / $8.62 p/s |
| **Average Recovery Per Share** | $0.14 | $0.50 | $0.07 | $0.40 | $0.16 | $0.09 |
| **Number of Notices Sent/Notice Methods** | 32,504 mail/newswire | 15,962 mail/newswire/newspaper | 4,067 mail/newswire | 37,910 mail/newswire/WSJ | 117,513 mail/newswire/WSJ | At least 33,578 mail/newswire/email |
| **Claims Rate/No. of Shares that Filed Claim** | 88% / 105m | 29% / 3m | 48%/5.6m | Distribution ongoing | Not available | 75% estimated |
| **Average Net Recovery based on Notices Sent** | $340 | $313 | $405 | $500 | $119 | Approx. $300 |
| ***Cy Pres*** | Federal Judicial Center Foundation | United Way Disaster Recovery Fund | Federal Judicial Center Foundation | Undisclosed Not for Profit | Undisclosed Not for Profit | ACLU |
| **Admin. Costs** | $258k | $188k | $57k | Not available | Not available | $191k - $247k |
| **Attorneys' Fees & Expenses** | 1/3 of fund and $25,904.80 exp. | 30% of fund and $457,541.63 exp. | 1/3 of fund and $16,960.20 exp. | 31% of fund and $123,809.79 exp. | 1/3 of fund and $867,891.13 exp. | Proposed 1/3 of fund and up to $400k exp. |
| **Alleged Damages** | $120m-$180m | Undisclosed | $5.2m-$9.9m | Undisclosed | $1.596b-$2.128b | $196m-599m |
| **Claims Released** | All claims relating to alleged facts, merger or proxy | All claims relating to merger and disclosures asserted or could have been asserted in action | All claims relating to action, merger, or proxy | All claims relating to alleged facts, merger or proxy | All claims relating to alleged facts, merger or proxy | All claims relating to action, merger, merger disclosures |