Juan E. Monteverde (admitted *pro hac vice*, NY Reg. No. 4467882)
**MONTEVERDE & ASSOCIATES PC**
The Empire State Building
350 Fifth Avenue, Suite 4740
New York, New York 10118
Tel: (212) 971-1341
jmonteverde@monteverdelaw.com

David E. Bower (SBN 119546)
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
dbower@monteverdelaw.com

*Counsel for Lead Plaintiff and*
*Lead Counsel for the Settlement Class*

[additional counsel on signature page]

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| SAISRAVAN BHARADWAJ KARRI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OCLARO, INC., MARISSA PETERSON, EDWARD COLLINS, GREG DOUGHERTY, KENDALL COWAN, DENISE HAYLOR, IAN SMALL, BILL SMITH, and JOEL A. SMITH III,<br><br>Defendants. | Case No. 3:18-cv-03435-JD<br><br>**LEAD PLAINTIFF'S NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, FOR CERTIFICATION OF THE SETTLEMENT CLASS AND FOR APPROVAL OF THE PLAN OF ALLOCATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: February 22, 2024<br>Time: 10:00 a.m.<br>Courtroom: 11 – 19th Floor<br>Judge: Hon. James Donato |

# TABLE OF CONTENTS

NOTICE OF MOTION ........................................................................................................................ 1
STATEMENT OF ISSUES TO BE DECIDED ................................................................................ 1
MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1
I. INTRODUCTION .................................................................................................................. 1
II. HISTORY OF THE LITIGATION AND FACTUAL BACKGROUND ...................... 4
III. STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS ... 5
    A. The Settlement Warrants Final Approval ................................................................. 5
    B. The Proposed Settlement Satisfies Rule 23(e)(2) ..................................................... 6
        1. Rule 23(e)(2)(A): Lead Plaintiff and Lead Counsel Have Adequately Represented the Class ........................................................................................ 6
        2. Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at Arm's Length After Mediation with an Experienced Mediator ................................ 7
        3. Rule 23(e)(2)(C): The Relief Provided for the Class is Adequate ............. 8
            a. Rule 23(e)(2)(C)(i): The Costs, Risks, and Delay of Trial and Appeal Support Approval ............................................................... 8
            b. Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing Relief is Effective .......................................................................................... 9
            c. Rule 23(e)(2)(C)(iii): Attorneys' Fees ............................................... 11
            d. Rule 23(e)(2)(C)(iv): Other Agreements ........................................... 11
        4. Rule 23(e)(2)(D): The Settlement Treats Class Members Equitably ....... 11
    C. The Ninth Circuit Factors are also Satisfied .......................................................... 11
        1. Discovery Completed and Stage of the Proceedings ................................ 11
        2. The Experience and Views of Lead Counsel ............................................ 12
        3. The Positive Reaction of Class Members to the Settlement .................... 12
        4. The Settlement Amount ............................................................................. 13
        5. The Risk of Achieving and Maintaining Class Action Status ................. 13
IV. THE PLAN OF ALLOCATION MERITS APPROVAL ............................................... 14
V. THE NOTICE SATISFIES DUE PROCESS ................................................................... 14
VI. FINAL CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES IS ALSO APPROPRIATE .......................................................................... 15
VII. CONCLUSION .................................................................................................................... 15

**TABLE OF AUTHORITIES**

**CASES** PAGE(S)

*Baum v. Harman Int'l Indus.*,
   575 F. Supp. 3d 289 (D. Conn. 2021) ............................................................................... 3, 4

*Campbell v. Facebook, Inc.*,
   951 F.3d 1106 (9th Cir. 2020) ............................................................................................... 5

*Campbell v. Transgenomic, Inc.*,
   2020 U.S. Dist. LEXIS 97063 (D. Neb. June 3, 2020) ........................................................ 14

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ....................................................................................... 6, 8, 12

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ............................................................................................. 14

*In re Envision Healthcare Corp.*,
   No. 18-1068-RGA (D. Del. 2021) .......................................................................................... 4

*In re Extreme Networks, Inc. Sec. Litig.*,
   No. 15-cv-04883-BLF, 2019 U.S. Dist. LEXIS 121886 (N.D. Cal. July 22, 2019) .......... 9, 11

*Foster v. Adams & Associates, Inc.*,
   2022 U.S. Dist. LEXIS 25071 (N.D. Cal. Feb. 11, 2022) .................................................... 12

*Hefler v. Wells Fargo & Co.*,
   2018 U.S. Dist. LEXIS 213045 (N.D. Cal. Dec. 17, 2018) .................................................. 10

*Hefler v. Wells Fargo & Co.*,
   2018 U.S. Dist. LEXIS 213045 (N.D. Cal. Dec. 18, 2018) .................................................... 8

*Jian Zhou v. Faraday Future Intelligent Electric Inc. et al*,
   Case No. 2:21-cv-09914, Dkt. No. 104-1 (C.D. Cal.) ............................................................ 4

*In Re: Mindbody Inc. Securities Litigation*,
   Case No. 1:19-cv-08331, Dkt. No. 118-1 (S.D.N.Y.) ............................................................ 4

*NECA-IBEW Pension Trust Fund v. Precision Castparts Corp.*,
   No. 16-cv-01756-YY (D. Or. 2021) ....................................................................................... 4

*In re Omnivision Techs.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................................................... 14

*In re Portal Software, Inc. Sec. Litig.*,
   2007 U.S. Dist. LEXIS 88886 (N.D. Cal. 2007) ................................................................... 9

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   2020 U.S. Dist. LEXIS 129939 (N.D. Cal. July 22, 2020) .................................................... 9

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370, 1376 (9th Cir. 1993) .................................................................................... 9

*In re Resolute Energy Corp. Sec. Litig.*,
   No. 19-77-RGA, 2021 U.S. Dist. LEXIS 19193 (D. Del. Feb. 1, 2021) ................................... 4

*Jiangchen v. Rentech, Inc.*,
   No. CV 17-1490-GW(FFMx), 2019 U.S. Dist. LEXIS 180474 (C.D. Cal. Oct. 10, 2019) ... 10

*Medina v. NYC Harlem Foods Inc.*,
   No. 21-CV-1321 (VSB), 2022 U.S. Dist. LEXIS 73263 (S.D.N.Y. Apr. 21, 2022) .............. 11

*Mendoza v. Hyundai Motor Co.*,
   2017 WL 342059 (N.D. Cal. Jan. 23, 2017) ....................................................................... 6

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) ........................................................................................................... 3

*Nat'l Rural Telecomms. Coop. v. DIRECTTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ................................................................................. 12-13

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................................. 5, 7, 8, 11

*Va. Bankshares v. Sandberg*,
   501 U.S. 1083 (1991) ........................................................................................................ 3

*Vataj v. Johnson*,
   No. 19-cv-06996-HSG, 2021 U.S. Dist. LEXIS 75879 (N.D. Cal. Apr. 20, 2021) ................ 13

*Vinh Nguyen v. Radient Pharms. Corp.*,
   2014 U.S. Dist. LEXIS 63312 (C.D. Cal. May 6, 2014) .......................................................... 8

**STATUTES AND RULES**

15 U.S.C. § 78n(a) (Section 14(a) of the Securities Exchange Act of 1934) ....................... *passim*

17 C.F.R. § 240.14a-9 (SEC Rule 14a-9) ............................................................................... 4

17 C.F.R. § 240.10b-5 (SEC Rule 10b-5) ........................................................................... 3, 13

Fed. R. Civ. P. 12 ................................................................................................. 5, 6-7

Fed. R. Civ. P. 23 ........................................................................................................ *passim*

**OTHER AUTHORITIES**

Janeen McIntosh, Svetlana Starykh & Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023) ............................................................... 13

Laarni T. Bulan *et al*, *Securities Class Action Settlements: 2019 Review and Analysis*, Cornerstone Research ................................................................................................................................... 13

L.T. Bulan, L.E. Simmons, *Securities Class Action Settlements, 2022 Review and Analysis*, Cornerstone Research (2023) ................................................................................................... 13

**NOTICE OF MOTION**

**TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that on February 22, 2024 at 10:00 a.m., or as soon thereafter as counsel may be heard before the Honorable James Donato, U.S. District Judge, at the U.S. District Court, Northern District of California, 450 Golden Gate Ave., San Francisco, California, Lead Plaintiff Saisravan Bharadwaj Karri ("Plaintiff")[1] will and hereby does respectfully move the Court, pursuant to Federal Rule of Civil Procedure 23(e) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for entry of an Order: (i) granting final approval to the proposed Settlement; (ii) finally certifying the Settlement Class; and (iii) approving the proposed Plan of Allocation.

This Motion is supported by the following memorandum of points and authorities, the Declaration of Tina Chiango Regarding Dissemination of Notice to the Settlement Class and the exhibits thereto ("Chiango Decl.") (filed herewith), the previous filings in this case, and such other and further representations as may be made by counsel at any hearing on this matter.

A proposed Final Judgment and Order of Dismissal with Prejudice and proposed Order granting approval of the proposed Plan of Allocation is submitted herewith.

**STATEMENT OF ISSUES TO BE DECIDED**

1.  Whether the Court should grant final approval of the Settlement, final certification of the Settlement Class, and approve the Plan of Allocation.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

The proposed Settlement follows more than four years of hard-fought litigation. The Settlement Amount of $15.25 million exceeds or is in line with other Section 14(a) merger settlements, which raise unique challenges that differentiate these cases from more traditional securities fraud class actions. The Class recovery here exceeds three of the five most analogous Section 14(a) merger litigation settlements

---

[1] All capitalized terms not defined herein have the same meanings as in the Stipulation of Settlement dated March 16, 2023 ("Stipulation"), as modified by the Addendum to Stipulation of Settlement ("Addendum") dated May 19, 2023. Dkt. Nos. 199-2 and 199-3. Unless noted otherwise, all internal citations and quotation marks have been omitted, and all emphasis is added.

previously identified by Lead Counsel when the average recovery per share is measured against the company's share price. *See* Dkt. No. 199 (Revised Motion for Preliminary Approval), Appendix A. The proposed Settlement Fund also represents 4.54% - 13.84% of plausible damages predicated on the cash portion of the merger consideration, bringing it well within the range of recoveries secured in securities class actions more generally. *See* Dkt. No. 199 at 5, 23.

The Class's reaction to the Settlement further indicates that Lead Plaintiff and Lead Counsel have obtained a favorable result: **10,848 claims have been filed for over 139.7 million shares, representing a claims rate of 83 percent** based upon the 167.5 million shares estimated to be held by Class members. *See* Chiango Decl., ¶ 13. Moreover, the current average claim recovery, after deducting proposed fees, expenses and administration costs, will amount to approximately $883. Additionally, no objections and only three requests for exclusion (totaling 1,005 shares) have been received. Chiango Decl., ¶¶ 11, 12, Ex. D. These metrics indicate a strong settlement, and support granting the requested relief in full.

Lead Plaintiff and Lead Counsel are also confident that the Settlement is a favorable outcome for the Class, as it was reached at a stage when Lead Counsel could critically assess the Action's strengths and weaknesses. Among other things, Lead Counsel conducted a thorough investigation, drafted complaints, and ultimately defeated in part Defendants' initial motion to dismiss (Dkt. No. 43) as well as Oclaro's motion for judgment on the pleadings (Dkt. No. 143). Lead Plaintiff and Lead Counsel then conducted extensive fact discovery, which included: (i) propounding eleven subpoenas; (ii) propounding and responding to multiple written discovery requests; (iii) reviewing in excess of 400,000 pages of documents containing e-mails, board materials, financial data and projections, analyst reports, and other Merger related documentation; (iv) producing documents to Defendants; (v) eleven fact witness depositions; (vi) expert reports; (vii) depositions of each of the parties' experts; and (viii) securing affidavits from relevant third parties. Lead Plaintiff's motion for class certification was fully briefed (Dkt. No. 173) and Lead Counsel was developing Lead Plaintiff's claims for trial when, during the parties' second mediation, an agreement was reached regarding key Settlement terms, including the $15,250,000 common fund. There is no question that the extensive litigation and settlement efforts

provided Lead Plaintiff and Lead Counsel with a thorough understanding of the strengths and weaknesses of the Action, making them well-positioned to evaluate the fairness of the Settlement.

While Lead Counsel believes the claims have merit, throughout the course of litigation Defendants have adamantly denied liability, arguing that the Proxy did not contain any false or misleading statements. Dkt. No. 184 at 6. Defendants have also argued that Lead Plaintiff cannot establish causally-related damages because Oclaro stockholders received the full benefit that Oclaro bargained for in the Merger and the consideration was the best price reasonably available for Oclaro's stockholders and a premium to Oclaro's trading price. *Id*.; Dkt. No. 177 at 15-20. The Merger provided that each share of Oclaro stock would be exchanged for $5.60 in cash and 0.0636 shares of Lumentum stock. Dkt. No. 20 at 20, ¶77. That Lumentum's stock declined between the time of signing and the Merger's close, Defendants argued, was well-known and fully disclosed and constituted an intervening cause that destroyed any alleged causation. Dkt. No. 184 at 7.

At trial, the case would have turned largely on expert testimony concerning these highly technical economic issues, as well as Plaintiff's ability to establish liability by convincing a jury that Defendants' primary rationale for reducing Oclaro's projections was a pretextual attempt to justify the reduction rather than a legitimate business decision.  Even if Plaintiff prevailed on liability, which was exceedingly difficult on the evidentiary record and required challenging management's business decision to exit a segment that reduced revenues in the February Projections, loss causation presents challenges in this case that far exceed the obstacles facing plaintiffs in more frequently litigated Rule 10b-5 cases seeking losses incurred during a stock price drop. Here, Plaintiff's loss causation theory is that shareholders were misled into approving an acquisition that undervalued Oclaro, notwithstanding the fact that the merger consideration represented a *27% premium* over Oclaro's stock price the day before the Merger. Although Plaintiff believes his loss causation theory is valid under Supreme Court precedent,[2] several recent lower court opinions have found that when shareholders receive a premium over the trading price it forecloses a finding of economic loss, because the merger consideration is

---

[2] *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 389 (1970); *Va. Bankshares v. Sandberg*, 501 U.S. 1083, 1100 (1991); *see also Baum v. Harman Int'l Indus.*, 575 F. Supp. 3d 289, 299 (D. Conn. 2021).

3
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:18-cv-03435-JD

"greater than the market value or actual value of the shares without consideration of the merger due to the existence of a merger premium." *In re Resolute Energy Corp. Sec. Litig.*, No. 19-77-RGA, 2021 U.S. Dist. LEXIS 19193, at *5, *10 (D. Del. Feb. 1, 2021) (citing 5 other opinions in support of proposition). If this Court had agreed with the reasoning in such cases, Plaintiff would have been unable to prove loss causation as a matter of law and there would have been no recovery for the Class.

Nevertheless, through Lead Counsel's ingenuity, vigorous advocacy, skill and perseverance despite significant impediments to recovery, Plaintiff has secured relief for the Settlement Class that is not just in line with, but superior to, other § 14(a) "merger projection challenge" case settlements involving companies with larger market caps and much higher stock prices. The Class will recover $0.09 per share for Oclaro shares that were valued at $8.36, compared to $0.14 per share for a $46 stock in *In re Envision Healthcare Corp.*, No. 18-1068-RGA (D. Del. 2021), $0.40 per share for a $111.50 stock in *Baum v. Harman Int'l Indus. Inc.*, No. 3:17-cv-00246-RNC (D. Conn. 2022), and $0.16 per share for a $235 stock in *NECA-IBEW Pension Trust Fund v. Precision Castparts Corp.*, No. 16-cv-01756-YY (D. Or. 2021). Dkt. No. 199, Appendix A. The Settlement is also superior compared to two recent merger-related securities class action settlements that were post-motion to dismiss. *See Jian Zhou v. Faraday Future Intelligent Electric Inc. et al,* Case No. 2:21-cv-09914, Dkt. No. 104-1 (C.D. Cal.) ($7.5 million); *In Re: Mindbody Inc. Securities Litigation*, Case No. 1:19-cv-08331, Dkt. No. 118-1 (S.D.N.Y.) ($9.75 million).

For these reasons, elaborated on below, the Court should grant final approval of the Settlement.

## II.    HISTORY OF THE LITIGATION AND FACTUAL BACKGROUND

Lead Plaintiff filed this Action on June 9, 2018, against Oclaro and its board of directors (the "Defendants") alleging violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 14a-9 in connection with the acquisition of Oclaro by Lumentum via a materially false and misleading proxy statement ("Proxy"). Dkt. No. 1. The Merger closed on December 10, 2018. On April 15, 2019, Lead Plaintiff filed the Amended Class Action Complaint (the "Amended Complaint") – the operative pleading in the Action. Dkt. No. 20.

Lead Plaintiff conducted thorough fact and expert discovery. The parties conducted eleven

fact witness depositions, and each of the parties' five respective experts were deposed.

Lead Plaintiff successfully defeated challenges to the Amended Complaint, including Defendants' Motion to Dismiss, which was granted in part and denied in part (Dkt. No. 43), as well as Oclaro's Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) (Dkt. No. 143). The parties engaged their respective experts, with Lead Plaintiff retaining William Jeffers, CFA of The Griffing Group and Prof. Stephen J. Lubben, and Defendants engaging Prof. Steven Davidoff Solomon, Prof. Andrea Eisfeldt and Prof. Wayne D. Hoyer. On August 16, 2022, Lead Plaintiff filed a Motion for Class Certification (Dkt. No. 173), which was fully briefed and awaiting oral argument. A jury trial was proposed to be scheduled for May 9, 2023.  Dkt. No. 145.

Fact and expert discovery were completed when Lead Plaintiff and Lead Counsel agreed to the proposed Settlement. The parties convened for their first mediation before mediator Michelle M. Yoshida, Esq. of Phillips ADR Enterprises on August 3, 2021, although the parties were unable to reach any agreement at that time. Thereafter, Lead Plaintiff and Lead Counsel proceeded to zealously litigate this case. On January 10, 2023, the parties attended a second mediation with Ms. Yoshida. The parties prepared further written mediation statements, and, after nearly fourteen hours of adversarial in-person negotiations, the parties reached an agreement regarding the $15.25 million Settlement. Lead Plaintiff filed a Notice of Settlement on January 18, 2023.  Dkt. No. 187.

## III.    STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

### A.    THE SETTLEMENT WARRANTS FINAL APPROVAL

In the Ninth Circuit, there is a "'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556, 568 (9th Cir. 2019)). The Court need not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute[.]" *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009). Rather, it must "reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 965.

Pursuant to Federal Rule of Civil Procedure 23(e), "the court may approve [a proposed settlement] only after a hearing and only on finding that it is fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether a settlement is "fair, reasonable, and adequate," the court must:

> Consider[] whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; (vi) and any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. *Id.*

The Ninth Circuit has also set forth the following factors for courts to consider when examining whether a proposed settlement is fair, reasonable and adequate, several of which overlap with the Rule 23(e)(2) factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.[3]

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

As set forth below, these factors support granting final approval.

**B.     THE PROPOSED SETTLEMENT SATISFIES RULE 23(e)(2)**

**1.     Rule 23(e)(2)(A): Lead Plaintiff and Lead Counsel Have Adequately Represented the Class**

Lead Plaintiff and Lead Counsel have diligently represented the Class as required by Rule 23(e)(2)(A). Lead Counsel is highly qualified and experienced in securities litigation (*see* Monteverde Firm Resume, Dkt. No. 199-4) and zealously prosecuted this Action on behalf of Lead Plaintiff and the Settlement Class.  The proposed Settlement in this Section 14(a) merger litigation – which involved considerable challenges to proving liability and damages – would not have been possible but for Lead Counsel's perseverance and sound advocacy for the Settlement Class. Defendants twice sought

---

[3] "Because there is no governmental entity involved in this litigation, this [seventh] factor is inapplicable." *Mendoza v. Hyundai Motor Co.*, 2017 WL 342059, at *7 (N.D. Cal. Jan. 23, 2017).

dismissal of the Action, and Oclaro filed a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) and then sought to pursue an interlocutory appeal. Lead Counsel overcame Defendants' challenges and conducted extensive discovery, retained experts, filed Plaintiff's motion for class certification, and was preparing the claims for trial. The extensive four-year litigation history should leave no doubt that Lead Plaintiff and Lead Counsel have zealously advocated for the Class.

Moreover, Lead Plaintiff and Lead Counsel have no interests antagonistic to those of the Settlement Class Members. The claims of Lead Plaintiff and the Settlement Class Members arise from the same alleged conduct and Lead Plaintiff shares the common interest in obtaining the largest possible recovery for the Settlement Class. Lead Plaintiff's and Lead Counsel's commitment to obtaining the best possible result for the Settlement Class is evinced by the adversarial history of this litigation discussed above and the considerable time and resources devoted to prosecuting this Action, which enabled them to negotiate a strong Settlement for the Settlement. This factor supports final approval.

### 2. Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at Arm's Length After Mediation with an Experienced Mediator

Rule 23(e)(2)(B) asks whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Courts "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez*, 563 F.3d at 965. The Settlement at issue here bears the hallmark signs of a diligently contested arm's length compromise. Foremost, it is the product of serious, informed, non-collusive negotiations between the parties after extensive litigation and two mediations before an experienced mediator. Ms. Yoshida has been a mediator for more than 15 years, serving as mediator for cases regarding complex business litigation including securities and derivative actions. Philips ADR, Michelle Yoshida, Esq., http://www.phillipsadr.com/ bios/michelle-yoshida/ (last visited Jan. 10, 2024). Through the mediation process, the strengths and weaknesses of the parties' claims and defenses were extensively debated. The Settlement that followed the parties' second mediation did not occur until January 2023, after the completion of fact and expert discovery. At the time of the second mediation, Lead Counsel had devoted thousands of hours to prosecuting the litigation, engaged in substantial motion practice and an adversarial discovery process, and was in the process of developing Plaintiff's

claims for trial. Additionally, and in support of the non-collusive nature of the Settlement, the proposed Settlement will provide a significant monetary recovery to the Class from which counsel seeks a reasonable attorneys' fee constituting a negative multiplier on their lodestar, and the Settlement Amount will not revert to Defendants. All of these facts demonstrate that the Settlement is the result of arm's length negotiations and "not the product of fraud or overreaching by, or collusion between, the negotiating parties[.]" *Rodriguez*, 563 F.3d at 965; *see also id*. at 961 n.5.

### 3. Rule 23(e)(2)(C): The Relief Provided for the Class is Adequate

#### a. Rule 23(e)(2)(C)(i): The Costs, Risks, and Delay of Trial and Appeal Support Approval

Pursuant to Rule 23(e)(2)(C)(i), the Court considers "the costs, risks, and delay of trial and appeal," *id*., and the relevant overlapping Ninth Circuit factors address "the strength of the plaintiffs' case" and "the risk, expense, complexity and likely duration of further litigation." *Churchill*, 361 F.3d at 575.

While Lead Plaintiff believes his claims have merit, this belief is tempered by the knowledge that securities class actions are "notably difficult and notoriously uncertain." *Hefler v. Wells Fargo & Co.,* 2018 U.S. Dist. LEXIS 213045, at *37 (N.D. Cal. Dec. 18, 2018, *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (citations omitted). The dearth of Section 14(a) merger litigation makes for even greater risk and uncertainty of proceeding to trial here. The benefits conferred on the Class by the Settlement far outweigh the costs, risks and delay of further litigation and confirm the fairness of the Settlement.

To Lead Counsel's knowledge, not a single Section 14(a) case has gone to trial this century, underscoring the risks faced by Lead Plaintiff if this Action was to go to trial. The risks of this Action are magnified by the fact that the merger consideration consisted of both cash and stock, giving way to vigorous debate amongst the parties' experts as to the measure of damages. *Cf. Vinh Nguyen v. Radient Pharms. Corp.*, 2014 U.S. Dist. LEXIS 63312, at *6 (C.D. Cal. May 6, 2014) (noting that in securities class actions, "[p]roving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the

law. The outcome of that analysis is inherently difficult to predict and risky."). At trial, the case would have turned largely on expert testimony concerning highly technical economic issues, as well as Plaintiff's ability to establish liability by convincing a jury that Defendants' primary rationale for reducing Oclaro's projections was a pretextual attempt to justify the reduction rather than a legitimate business decision. *See In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 U.S. Dist. LEXIS 121886, at *25 (N.D. Cal. July 22, 2019) (noting that "[s]ecurities actions, in particular are often long, hard-fought, complicated, and extremely difficult to win" facing "obstacles include[ing] challenges to the material falsity of each alleged misstatement, class certification challenges, loss causation and damages challenges, and the risks inherent in a 'battle of the experts' of complex economic theories in a jury trial"). Defendants advanced several plausible arguments disputing both liability and damages and Lead Counsel believes that Defendants would have continued to make these arguments at trial.

Moreover, while Lead Plaintiff's motion for class certification was fully brief and Lead Counsel had begun to prepare the claims for trial, much work remained including an anticipated motion for summary judgment. *In re Portal Software, Inc. Sec. Litig.,* 2007 U.S. Dist. LEXIS 88886, at *8 (N.D. Cal. 2007) (finding the "significant risks to plaintiffs' ability to survive the pending summary judgment and prevailing at trial, suggest that settlement here is prudent."). Even if Lead Plaintiff eventually prevailed at trial, it would have taken potentially years to resolve any resulting appeals. "By contrast, the Settlement provides the Settlement Class with timely and certain recovery." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 129939, *46 (N.D. Cal. July 22, 2020). Further, the Settlement provides a meaningful recovery to Class Members and avoids "the cost, complexity and time of fully litigating the case" *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). Thus, this factor also supports final approval of the Settlement.

      **b.**      **Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing Relief is Effective**

Lead Plaintiff and Lead Counsel have also made substantial efforts to notify the Class about the proposed Settlement under Rule 23(e)(2)(C)(ii). In accordance with the Preliminary Approval Order,

9

over 44,000 Notices were mailed and 9,503 emails were sent to potential Class Members and nominees;[4] Summary Notice was transmitted over *PRNewswire*; the Notice was posted to the Depository Trust & Clearing Corporation Legal Notice System; and a Settlement website was established containing key documents and enabling Class members to submit claims electronically. *See* Chiango Decl. As a result of the robust notice program, 10,848 claims have been filed, representing 139.7 million shares, i.e., 83% of the shares believed to be held by Class members. *Id.* at ¶ 13.

The Settlement Fund will also be effectively distributed to the Class. The claims process here is identical to the processes commonly and effectively used with other class action settlements. *See, e.g., Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMx), 2019 U.S. Dist. LEXIS 180474, at *23 (C.D. Cal. Oct. 10, 2019) (setting forth similar procedure and finding the "method proposed by the parties for processing Settlement Class Members' claims is typical for a securities . . . settlement"). Lead Plaintiff's proposed methods of distribution are set forth in greater detail in the parties' Stipulation. Dkt. No. 199-2, Ex. 1, ¶¶ 5.1-5.9. In summary, the Proof of Claim and Release requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. Dkt. No. 199-3. Claimants were required to submit the Proof of Claim and Release by the date specified in the Notice. *Id.*; Dkt. No. 199-2, Ex. A-1, pp. 1-2. Each Proof of Claim and Release is reviewed by the Claims Administrator who will communicate with the Claimant regarding possible deficiencies and how to cure them. Dkt. No. 199-2, Ex. 1, ¶ 5.3. The Plan of Allocation, discussed below, will govern how claims will be calculated and, ultimately, how funds will be distributed to claimants.[5] No distributions will be made to Authorized Claimants who would otherwise receive a distribution of less than $10.00, which is a standard threshold. *E.g., Hefler v. Wells Fargo & Co.*, 2018 U.S. Dist. LEXIS 213045, *31 (N.D. Cal. Dec. 17, 2018).

---

[4] 2,851 Notices were returned as undeliverable. RG/2 was able to obtain an updated address for 1,643 Notices and re-sent them. Chiango Decl., ¶ 8.

[5] Once Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved attorneys' fees and expenses have been paid from the Settlement Fund, the remaining sum will be distributed pursuant to the Plan of Allocation. *See* Stipulation, Dkt. No. 199-2, Ex. 1, ¶ 5.2. These distributions shall be repeated until the balance remaining in the Settlement Fund is *de minimis*. *Id.* ¶ 5.7. If there are any residual funds that are not feasible or economical to relocate, Lead Plaintiff proposes that such funds be donated to the ACLU Foundation of Northern California. *Id.*

#### c. Rule 23(e)(2)(C)(iii): Attorneys' Fees

As discussed in Lead Counsel's Motion for Attorneys' Fees (Dkt. No. 213), Lead Counsel seeks an award of attorneys' fees of one third of the Settlement Amount, expenses of $397,680.55, plus accrued interest. This fee request was fully disclosed in the Notice (Dkt. No. 199-2, Ex. A-1, Notice at §17), and is reasonable based upon the applicable Ninth Circuit factors. *See generally* Motion for Attorneys' Fees at §III.

#### d. Rule 23(e)(2)(C)(iv): Other Agreements

As Lead Plaintiff noted in his revised motion for preliminary approval, Dkt. No. 199 at 9 n.7, the parties entered into a Supplemental Agreement with a customary opt-out threshold "blow-up provision," which was not publicly filed to avoid disclosing the specific threshold. *See Medina v. NYC Harlem Foods Inc.*, No. 21-CV-1321 (VSB), 2022 U.S. Dist. LEXIS 73263, at *19-20 (S.D.N.Y. Apr. 21, 2022).

### 4. Rule 23(e)(2)(D): The Settlement Treats Class Members Equitably

Pursuant to Rule 23(e)(2)(D), the Settlement must "treat[] class members equitably relative to each other." As noted above, the Plan of Allocation details how the Settlement proceeds will be distributed among Authorized Claimants and provides a formula for calculating the recognized claim of each Class Member based on each such person's holdings of Oclaro stock. The proposed Plan of Allocation is fair, reasonable and adequate because all eligible Class Members (including Lead Plaintiff) will be subject to the same formula for distribution of the Settlement and each Authorized Claimant will receive his, her or its *pro rata* share of the distribution. While Lead Plaintiff seeks a service award of $5,000, such award would "not constitute inequitable treatment of class members." *Extreme Networks*, 2019 U.S. Dist. LEXIS 121886, at *26 (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)). Accordingly, this factor weighs in favor of final approval.

### C. THE NINTH CIRCUIT FACTORS ARE ALSO SATISFIED

#### 1. Discovery Completed and Stage of the Proceedings

The Ninth Circuit *Churchill* factors not already addressed above also support final approval. The Parties reached the Settlement in January 2023, at an advanced state in the Action after the

completion of fact and expert discovery. At the time, Lead Counsel had devoted thousands of hours to prosecuting the Litigation, engaging in substantial motion practice, and an adversarial discovery process. As a result, Lead Plaintiff and Lead Counsel had a thorough understanding of the arguments, evidence and potential witnesses pertinent to trial and were well-positioned to evaluate the strengths and weaknesses of the claims and defenses at issue, as well as the fairness of the Settlement. *See Foster v. Adams & Associates, Inc.*, 2022 U.S. Dist. LEXIS 25071, at *16 (N.D. Cal. Feb. 11, 2022) (finding "[p]laintiffs were 'armed with sufficient information about the case' to broker a fair settlement" given "extensive fact and expert discovery," years of litigation, and three settlement conferences). Thus, this factor weighs in favor of final approval of the Settlement.

### 2. The Experience and Views of Lead Counsel

Courts in the Ninth Circuit accord weight to the recommendations and opinions of experienced counsel. *Churchill*, 361 F.3d at 575. Here, Lead Counsel has significant expertise in Section 14 merger litigation and is recognized as a preeminent securities firm, listed in the Top 50 in the 2018-2022 ISS Securities Class Action Services Report in recognition of the substantial settlements they have obtained. *See* https://monteverdelaw.com/news (providing ISS Reports). As discussed herein, through their zealous advocacy for the Class, Lead Counsel developed a thorough understanding of the facts, claims and Defendants' defenses. Based on Lead Counsel's experience as accomplished merger litigators, coupled with their evaluation of the facts and law, counsel concluded that the Settlement – achieved with the support and guidance of a well-respected securities mediator – was a fair and reasonable compromise and in the best interests of the Class. Accordingly, Lead Counsel's experience in securities litigation and their view that the Settlement is good result for the Class supports final approval.

### 3. The Positive Reaction of Class Members to the Settlement

The reaction of the class to the settlement is also a factor courts within this Circuit consider when evaluating whether to finally approve a Settlement. The "absence of a large number of objections to a proposed class action raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523,

529 (C.D. Cal. 2004). The deadline to object to the Settlement was December 21, 2023. No objections were received, and only three Class Members who collectively own 1,005 shares have requested exclusion. Chiango Decl., ¶¶ 11, 12, Ex. D. The Class's positive reaction to the Settlement supports final approval.

### 4. The Settlement Amount

The Settlement Amount of $15.25 million is in line with other Section 14(a) settlements, which raise unique challenges that do not exist in more traditional securities fraud actions under Section 10(b)/Rule 10b-5. The recovery of approximately 14% of most likely damages – *if* Plaintiff could establish liability and overcome multiple other challenges – is fair to the Class. *See, e.g., Vataj v. Johnson*, No. 19-cv-06996-HSG, 2021 U.S. Dist. LEXIS 75879, at *26-27 (N.D. Cal. Apr. 20, 2021) (noting that where settlement was 2% of estimated damages, "this percentage is consistent with the typical recovery in securities class action settlements.") (citing Laarni T. Bulan *et al*, *Securities Class Action Settlements: 2019 Review and Analysis*, Cornerstone Research)); *see also* Janeen McIntosh, Svetlana Starykh & Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, at 18, Figure 19 (NERA Jan. 24, 2023) (median ratio of settlement to investor losses was 1.8% in 2022);[6] L.T. Bulan, L.E. Simmons, *Securities Class Action Settlements, 2022 Review and Analysis*, at 6, Cornerstone Research (2023) (noting the median and average settlement as a percentage of damages were 3.6% and 5.4%, respectively).[7] More importantly, the Class will recover $0.09 per share for its Oclaro stock that was trading at $8.36, which exceeds the per share recovery percentage in several comparable § 14(a) merger cases. *See* Dkt. No. 199, Appendix A.

### 5. The Risk of Achieving and Maintaining Class Action Status

Lead Plaintiff also faced the risk that class certification would not be granted or if it was, that they would be unable to maintain class action status through trial. While Lead Plaintiffs believe that this Action should have been maintained as a class action, Defendants contested Lead Plaintiff's class certification motion, challenging Lead Plaintiff's theories of loss causation and economic loss and

---

[6] https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_Trends.pdf
[7] https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf

presenting expert analyses in opposition to class certification. Dkt. No. 177. Had Defendants been successful in persuading the Court that the putative class should not be certified, the case would have effectively been over. *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1041-42 (N.D. Cal. 2007) (motion for class certification "may be outcome-determinative in itself"). Thus, the risk of certifying the Class and maintaining class certification through trial support approval of the Settlement.

**IV.   THE PLAN OF ALLOCATION MERITS APPROVAL**

Lead Plaintiff also seeks approval for the Plan of Allocation as set forth in the Notice disseminated to the Settlement Class. Dkt. No. 199-2, Ex. A-1. Like the standard for approval of a settlement, the standard for approval of a plan of allocation is whether the plan is fair, reasonable, and adequate. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992); *In re Omnivision Techs.*, 559 F. Supp. 2d at 1045. Under this standard, it is reasonable to allocate the settlement funds to class members based on the extent of their injuries. *Id.* In *Omnivision Techs.*, the Court approved a plan of allocation based on disbursement of the net settlement fund on a *pro rata* share basis, so each class member would receive a portion of the net settlement fund proportional to the number of shares they owned. *Id.* at 1045-46.

Here, as in *Omnivision Techs.*, the Plan of Allocation provides that each Authorized Claimant that submits a valid, timely Proof of Claim will receive distribution from the Net Settlement Fund on a *pro rata* basis. Dkt. No. 193-3, at p. 2. The Plan of Allocation is similar to plans approved in similar Section 14(a) merger cases. *See Campbell v. Transgenomic*, Inc., 2020 U.S. Dist. LEXIS 97063 (D. Neb. June 3, 2020); *Duncan v. Joy Global Inc. et al*, Case No. 2:16-cv-01229, Dkt. No. 77 (E.D. Wis. 2016); *In re Hot Topic, Inc. Sec. Litig.*, No. 2:13-cv-02939, Dkt. No. 86, 103 (C.D. Cal. 2015). In sum, the Plan of Allocation is fair, reasonable, and adequate, supported by authority in other Section 14(a) settlements, and therefore merits approval.

**V.   THE NOTICE SATISFIES DUE PROCESS**

As the Court found in granting preliminary approval, the notice program here satisfies Rule 23, the PSLRA, this Court's guidelines, and the Due Process Clause by fairly apprising the Class Members of their rights with respect to the Settlement, and is the best notice practicable under the circumstances.

*Order Re Preliminary Approval* (Dkt. No. 209), ¶ 14. Over 44,000 Notices were sent to potential Class members, who have responded positively to the Settlement. *See* Chiango Decl.

## VI. FINAL CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES IS ALSO APPROPRIATE

Finally, the Court should also finally certify the Settlement Class for the reasons previously stated in Lead Plaintiff's Revised Motion for Preliminary Approval of Settlement and Memorandum of Points and Authorities in Support Thereof. Dkt. No. 199. On August 28, 2023, the Court preliminarily certified the Settlement Class and found that all prerequisites for class certification under Rules 23(a) and (b)(3) had been satisfied. Dkt. No. 209. Since then, no material facts regarding any of the factors for class certification have changed.

## VII. CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court finally approve the Settlement and Plan of Allocation.

Dated: January 11, 2024                     Respectfully submitted,

/s/ *Juan E. Monteverde*
Juan E. Monteverde (NY Reg. No. 4467882)
**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde (admitted *pro hac vice*)
Miles D. Schreiner (admitted *pro hac vice*)
350 Fifth Avenue, Suite 4740
New York, NY 10118
Tel: (212) 971-1341
Email: jmonteverde@monteverdelaw.com
         mschreiner@monteverdelaw.com

David E. Bower SBN 119546
**MONTEVERDE & ASSOCIATES PC**
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (310) 446-6652
Email: dbower@monteverdelaw.com

*Counsel for Lead Plaintiff and*
*Lead Counsel for the Settlement Class*